STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. NICHOLAS GALLICCHIO, DEFENDANT-APPELLANT.

Argued December 5, 1967—Decided March 18, 1968.

*Mr. Peter N. Perretti, Jr.* argued the cause for defendant-appellant.

*Mr. John W. Noonan,* Assistant Prosecutor of Essex County, argued the cause for plaintiff-respondent (*Mr. Brendan. T. Byrne,* Prosecutor of Essex County, attorney; *Mr. Richard B. McGlynn,* Assistant Prosecutor of Essex County, of counsel and on the brief).

The opinion of the court was delivered by

SCHETTINO, J. Defendant appeals as of right under former *R. R.* 1:2–1(c) from a conviction of second degree murder and a sentence of 25-30 years. Defendant was indicted

under the short-form murder indictment charging him with killing a probationary policeman on October 16, 1965.

Defendant contends that there was error at various stages of the trial and that these errors, either singly or cumulatively, were prejudicial. *State v. Orecchio,* 16 *N. J.* 125 (1954). He therefore seeks reversal of his conviction and a new trial. His "defense" is alibi, *i.e.,* that he was not at the scene of the shooting at the time it took place.

The facts are as follows. About 12:00 noon on October 16, 1965, the decedent was a passenger in a car driven by a friend, Geramy Spampinato. While driving along Tuxedo Parkway in Newark, they noticed a man standing beside a white Valiant automobile. At the next intersection, while they were stopped, the same white car came up behind them; the driver stopped quickly and the brakes squealed. At a succeeding intersection, the Valiant was still behind them and, at a third intersection, the Valiant bumped Spampinato's car while it was halted for a red light.

The decedent got out of the car and directed the driver of the Valiant to back up. The driver then pulled back to the side of the road. Spampinato turned the corner to find a parking space. Within a minute or two he heard a noise like a shot, ran back to the corner, and saw the Valiant speed off and his friend fall. Spampinato testified that he recognized the car as the Valiant which they had passed shortly before; the driver was the defendant, the man who had been standing beside it. Other lay witnesses testified that they saw a white Valiant being driven by defendant about that time. Two policemen also testified that they had seen a white Valiant in areas nearby the shooting locale; each separately saw a white Valiant and each identified defendant as the driver.

Subsequent to the shooting, defendant was observed in the Reservoir Tavern; a white Valiant was parked across the street from the tavern. Police searched the tavern premises, and a gun was found in the men's room. (Defendant contends that the first search of the men's room revealed no

gun). Later ballistic tests proved this to be the murder weapon.

An uncle of the defendant was a member of the Newark Police Department. In testifying for the State he stated that he had participated in a search of the general area after the shooting. He noticed a white Valiant outside the Reservoir Tavern and saw his nephew, the defendant, inside the tavern. He noted that the description of the slayer generally fitted defendant.

The uncle went to police headquarters and, thereafter, he and another policeman, Detective Paul Whitehead, were directed to pick up defendant. They located him at another bar, arrested him, and drove him to police headquarters. When they arrived in front of the headquarters building, Detective Whitehead noticed defendant throw something out the car window. The uncle got out of the car and picked up the object — a set of car keys which fitted the Valiant.

As stated above, defendant's case consisted of alibi. Although defendant did not testify, he produced witnesses who testified that he was, at the time of the crime, elsewhere in the City of Newark. Moreover, he contended both that the description of the murderer given by the witnesses did not fit him, and that over-zealous police activity had produced erroneous identifications.

I

Defendant contends that the trial court erred when it denied a pretrial motion to suppress the use of defendant's prior criminal conviction. (He had been convicted and sentenced to a jail term in 1964 on a charge of atrocious assault and battery). He states that the denial of the motion impelled him not to take the stand.

Defendant submits that because this conviction was for a somewhat similar crime of violence it should have been suppressed. The claim is that the use of the prior conviction would have created a capacity for prejudice far outweighing its probative value on the issue of credibility.

· We find no error in the trial court's decision. *State v. Hawthorne,* 49 *N. J.* 130, 140–142 (1967); *State v. Burgess,* 97 *N. J. Super.* 428, 435 (*App. Div.* 1967).

## II

■ Defendant claims error in the trial court's refusal, upon motion, to grant a change of venue or a continuance of the trial from June 1966 to the fall term of 1966. His request was based on alleged prejudicial publicity contained in Essex County newspapers at the time of the killing and defendant's arrest. He contends that the publicity was so massive that it violated the standards set forth in *State v. Van Duyne,* 43 *N. J.* 369 (1964), *certiorari* denied 380 *U. S.* 987, 85 *S. Ct.* 1359, 14 *L. Ed.* 2d 279 (1965), and that he was therefore entitled to relief.

We note that defendant's special appendix, containing photo copies of newspaper stories, ends with December 1965, approximately six months before trial. Defendant does not submit any allegedly inflammatory news items for the period of the trial — June and July 1966. In *Van Duyne,* the publicity complained of appeared at the time of the trial. And in *Sheppard v. Maxwell,* 384 *U. S.* 333, 86 *S. Ct.* 1507, 16 *L. Ed.* 2d 600 (1966), there was "vicious" publicity beginning from the date of the crime and ending after the trial so that a "reasonable likelihood" of prejudice had been shown.

We conclude that as trial was held more than eight months after the crime, there was sufficient time for the passions, if any were aroused, to be dissipated. See *State v. Trantino,* 45 *N. J.* 37, 40 (1965), *certiorari* denied 382 *U. S.* 993, 86 *S. Ct.* 573, 15 *L. Ed.* 2d 479 (1966).

We find no error as alleged by defendant on this point.

## III

■ Defendant claims prejudice arising from a certain answer given at the trial by defendant's uncle. The uncle·

testified that when he first saw defendant at the Reservoir Tavern, he searched defendant's person and found nothing; he then searched the tavern and the men's room, where he also found nothing. The prosecutor asked him what he did next, and the detective's answer was:

"I came out and I waited a while. I thought it best to go down to headquarters to get a gallery picture of the defendant, if any."

Defendant's counsel moved for a mistrial because of the reference to "a gallery picture of the defendant, if any." He contended that these words were prejudicial because they indicated to the jury that defendant had a prior criminal record. The prosecutor stated that he did not know specifically what the detective's testimony would be and admitted that he was surprised by the witness' remarks with reference to the gallery picture.

Defendant's counsel made no objection in the presence of the jury because he felt that to do so would emphasize the inferential point made by him. For the same reason he declined a corrective instruction by the trial court.

The challenged testimony did not indicate any belief that a gallery picture would be available, and thus did not imply that defendant had a prior criminal record. There was, therefore, no error on this point.

IV

Defendant next claims prejudicial error arising out of a police lieutenant's testimony concerning the line-up procedure in this case. The lieutenant testified that three witnesses viewed the line-up. The first was Spampinato, who picked out the defendant. Another witness was called to make the identification, and the police lieutenant stated, in answer to the prosecutor's question as to whether the witness made an identification:

"No. But I instructed him if he saw anyone in the lineup he could identify to go over and put his hand on him and point him out and then to state how he was identifying him and why. And before I told him that and before he had a chance to scan the lineup the defendant said 'You might as well go pick me out because everyone else will' and he didn't make any identification."

■ Defendant seeks to apply *Miranda v. State of Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed. 2d* 694 (1966), to this statement. In *State v. Vigliano,* 50 *N. J.* 51, 66 (1967), Mr. Justice Francis said:

"* * * [W]e hold the view that the [United States Supreme] Court's reference to cases commenced and trials begun after June 13, 1966, and to its policy in other cases of application of similar new rules 'in a wholly prospective manner,' signify an intention that the Miranda rule should apply only to cases tried for the first time after June 13, 1966. In context we take 'commenced' and 'begun' to have the same significance, *i. e.,* to refer to those cases or trials which were initiated or in which the *first step* was taken *after* the stated date." (Emphasis supplied).

*Miranda* does not apply to this case as *voir dire* commenced on June 6, 1966, prior to the *Miranda* decision. *Johnson v. State of New Jersey,* 384 *U. S.* 719, 86 *S. Ct.* 1772, 16 *L. Ed. 2d* 882 (1966).

■ Moreover, assuming *Miranda* applies as to date of trial, we find that a statement made under the circumstances here does not fall within the *Miranda* rule. Defendant had been in custody for an hour, but he was not being questioned when he made the statement. He volunteered it, and it is certainly not the product of interrogation referred to in *Miranda. State v. Gosser,* 50 *N. J.* 438, 446 (1967) ; *Ballay v. People,* 419 *P. 2d* 446, 449 (*Colo.* 1966).

## V

■■ A Detective Biancone was involved in a physical encounter with a defense witness, Salardino, after both had completed their testimony. The defense sought to recall Biancone for further cross-examination with respect to that

encounter. The trial court, in camera, explored the subject fully and concluded that the proposed further examination would lead to the trial of collateral subjects which would obscure the issues in the case. A judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will create substantial danger of confusing the issues or of misleading the jury. *Rule of Evidence No. 4, N. J. S. 2A:84A-16*. The trial judge was of that view and we see no reason to disagree with him.

## VI

█ Defendant's next point is that the trial court abused its discretion in conducting part of the examination of a witness for the State.

The witness involved was the bartender in the Reservoir Tavern on the day of the shooting. He had given the police a statement at approximately 5:30 p.m. on the day of the murder. In that statement he said that he had seen defendant in the bar between 12:00 noon and 3:00 P.M. and noticed that defendant had used the men's room. At the trial, the bartender was unwilling to say that he had seen defendant go into the men's room; he asserted that he could not remember because he had been busy during the period in question.

A reading of this portion of the record leaves the distinct impression that the bartender was either confused or intentionally evasive about what he had seen on the day of the murder. The trial court, in our opinion, tried with great patience to get the bartender to tell the court and the jury exactly what he remembered. The witness was obviously unhappy at the prospect of testifying. He was either unable or unwilling to understand the directions of counsel and the trial court. We note that what was attempted by counsel and the court was to get the witness to specify his present or final testimony.

Furthermore, the trial court, with the consent of both attorneys, cautioned the jury that the bartender's prior statement was to have no substantive effect.

We find no error in the trial court's handling of the matter.

## VII

Defendant also claims prejudicial error in that the name and address of one of the witnesses was not included in the prosecution's answer to a demand for a bill of particulars. (The defense had sought a list of all persons having information about the crime.)

We find this claim to be baseless. Defendant admits that the prosecutor never had the witness' name. Defense counsel himself eventually discovered the witness, and the witness testified on behalf of defendant.

Defendant submits, however, that the Newark police, who had interviewed the witness, should have passed his name on to the prosecutor so that the prosecutor could have stated it in his answers to the demand for a bill of particulars. Defendant feels that there may have been other people interviewed by the Newark police who would have helped defendant's cause. He concedes that he has no knowledge of such witnesses. We find defendant's claim to be based on pure speculation and, therefore, no prejudicial error has been shown.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN and SCHETTINO—6.

*For reversal* — None.