STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. GLORIA GRAVES, DEFENDANT-RESPONDENT.

Argued April 10, 1972—Decided May 22, 1972.

*Ms. Sara A. Friedman,* Assistant Prosecutor, argued the cause for plaintiff-appellant (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney; *Ms. Sara A. Friedman* and *Mr. Richard F. Thayer,* Assistant Prosecutors, of counsel and on the brief).

*Ms. Cynthia M. Jacob,* Deputy Public Defender, argued the cause for defendant-respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Ms. Cynthia M. Jacob* of counsel and on the brief).

*Ms. Nadine Taub* argued *amicus curiae* for Community Legal Action Workshop, Urban League of Essex County, Essex County Welfare Rights Organization (*Ms. Margaret Hayden* and *Mr. Edward Kopelson,* of counsel and on the brief).

The opinion of the Court was delivered by

PROCTOR, J. Defendant, Gloria Graves, was convicted by a jury of having obtained county welfare funds by false pretense through her failure to disclose a material fact in violation of *N. J. S. A.* 2A:111–3.[1] The indictment charged

---

[1]The statute provides in pertinent part that any person who . . . by concealing or failing to disclose a material fact which it is his duty to reveal, obtains for himself or for any other person from any agency of the State or from any county or municipality, or any agency of such county or municipality, financial or other assistance in any form, is guilty of a misdemeanor.

the defendant with having received financial assistance between October 1, 1967 and February 1, 1968, from the Essex County Welfare Board by failing to disclose that during that period she was living with her husband.[2]

On appeal to the Appellate Division defendant contended that the conviction should be reversed because the trial court erred (1) in admitting in evidence statements made by the defendant in an interrogation where the four-fold warnings required by *Miranda v. Arizona,* 384 *U. S.* 436, 86 S. Ct. 1602, 16 *L. Ed. 2d* 694 (1966) were not given; (2) in failing to direct a verdict of acquittal because defendant did not withhold a material fact; and (3) in neglecting to charge that if defendant informed the caseworker of her husband's presence she was to be acquitted. The Court reversed and remanded for a new trial holding that the full *Miranda* warnings should have been given.[3] 114 *N. J. Super.* 222, 226 (1971). Because of its disposition of the case the Court did not consider defendant's remaining contentions. We granted the State's petition for certification. 58 *N. J.* 596 (1971).

Since 1963 the defendant had been receiving continuing assistance for herself and children from the welfare board. The board requires semi-annual applications to be made for such assistance. On May 24, 1967, defendant executed her semi-annual application for aid on which she indicated that her family consisted of herself and her three children. In September or October of that year she began to receive aid for a fourth child born in August. On the face of the application form there is a requirement that the recipient report immediately to the board any change in living conditions, family situation or income from any source. The re-

[2]The prosecutor conceded that the month of October, 1967 should not have been included in the indictment.

[3]The Court held the failure to inform the defendant of her right to remain silent violated *Miranda,* notwithstanding that she was given the other warnings enumerated in that case.

cipient receives a check each month which contains on the reverse side a statement by the payee that he or she shall report to the board any change in circumstances, finances, employment or resources.

Defendant received and endorsed four such checks on the first day of November and December of 1967 and January and February of 1968, the period in question. It is not disputed that defendant's husband was not a member of the household from April, 1967 to the latter part of October, 1967.

At the trial Mitchell Osur testified for the State that he employed Harold Graves, defendant's husband, from November, 1967 through February, 1968. He said Mr. Graves "worked when he felt like coming to work" and his total earnings for the four-month period were about $1,000. He also said that Mr. Graves gave an address which was the same as defendant's and that he claimed four tax exemptions including himself.

Harry O'Boyle, an investigator for the welfare board, testified that four checks each in the sum of $322 were paid to the defendant as assistance for the months of November, 1967 through February, 1968. He said that on February 2, 1968, he interviewed Harold Graves who told him that he had been living with the defendant "for a period of time." This testimony was admitted over defendant's objection. He said he then learned that Harold Graves was noted on the board's records as not living at the defendant's home. He then requested the defendant to come to the board office to discuss the situation. On the afternoon of February 2, 1968, defendant was interviewed by O'Boyle in the presence of Michael Deangelus, supervisor of the fraud department of the board.

At this point defense counsel was granted a hearing to determine if *Miranda* warnings were given before any statement was elicited from defendant. O'Boyle testified the interview was held in a large room where 35 male and female employees worked and which contained about 25 or 30 desks.

He said Deangelus informed the defendant of her *Miranda* rights with the exception of her right to remain silent. Defendant testified that the interview was conducted by six male investigators and that she was not informed of her rights. The trial court accepted the State's proof that only two men, O'Boyle and Deangelus, were present at the interview and further found that under the circumstances *Miranda* was inapplicable.

O'Boyle then testified before the jury as to the statements made by the defendant to him and Deangelus. He said she told him that Harold Graves was living with her from November through February and that she did not notify the welfare board of this fact. He said had the board known that the husband was living at the defendant's home the assistance payment for those months would have been reduced.

Testifying on her own behalf the defendant admitted she had received the four checks referred to above from the welfare board. She testified that in April, 1967 her husband had left her and the children. She said that in the latter part of November, 1967 her husband came to the house. After he entered over her objection she called the police who took him away. Shortly thereafter she notified Mr. Moore, a welfare supervisor, of the incident. She said he told her he would make a note of it and send a caseworker to her home. She said that from November, 1967 into February, 1968 her husband would come to the house intermittently, "stay a few nights and then he leaves for two weeks and he'd come back . . . ." He did not keep any clothes in the house during these months and he told her he was staying at his sister's house when he was away. She said that at no time during the period in question did her husband give her any money for the support of herself or the children. In February of 1968 she said her husband brought his clothes to the house and began staying there.

Mrs. Graves further testified that sometime in January, 1968 a caseworker, Mr. Ford, visited her and she told him

all the above facts. She said they also discussed the question of reconciliation between her and her husband.[4]

Robert Ford, Mrs. Graves' caseworker during the four-month period, testified that he made several unannounced visits to the home but never saw Mr. Graves there. His testimony substantially corroborated that of Mrs. Graves as to his January visit.

At the end of the case defense counsel moved for judgment of acquittal on the ground that there was no proof that defendant withheld a material fact from the board. The trial court rejected this contention holding the question was for the jury's determination.

On this appeal the State contends the Appellate Division erred in holding the warnings required by *Miranda* apply to the facts in this case. We agree. The Court in *Miranda* held that statements by accused stemming from custodial interrogation may not be used by the prosecution in a criminal proceeding unless the warnings enumerated in that case are given. *Id.*, 384 *U. S.* at 444, 86 S. Ct. at 1612, 16 *L. Ed. 2d* at 706. The Court said, "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* We have held that *Miranda* does not apply to non-custodial interrogations. *State v. Zucconi,* 50 *N. J.* 361, 363 (1967) ; see *State v. Seefeldt,* 51 *N. J.* 472, 482 (1968).

*Miranda* dealt with statements made by suspects in the police station; however, the concept has been applied to questioning outside the station house. See *Orozco v. Texas,* 394 *U. S.* 324, 89 S. Ct. 1095, 22 *L. Ed. 2d* 311 (1969). It is also clear that *Miranda* not only applies where the interrogator is a policeman but is applicable to any govern-

---

[4]It appears that as a result of this interview she made a complaint against her husband for non-support in the Domestic Relations Court. However, the record is unclear as to the proceedings in that court or the disposition made there.

mental agency investigation wherein a custodial interrogation is conducted. See *Mathis v. United States*, 391 *U. S.* 1, 88 S. Ct. 1503, 20 *L. Ed. 2d* 381 (1968).

The Appellate Division relied primarily on the fact that defendant was a suspect at the time of the interrogation. It held that "when the interrogation process shifts from investigatory to accusatory — when its focus is on the accused and its purpose is to elicit a confession — our adversary system begins to operate and the accused is entitled to the presence of counsel as well as to be given the other *Miranda* warnings." 114 *N. J. Super.* at 226. However, the cases of *Orozco, supra* and *Mathis, supra,* upon which the Appellate Division relied, do not support this view because in those cases it was crucial that the suspect was in custody when questioned. In *Orozco* police officers questioned the accused in his bedroom but they admitted that "[f]rom the moment he [Orozco] gave his name, . . . petitioner was not free to go where he pleased but was 'under arrest.' " 394 *U. S.* at 325, 89 S. Ct. at 1096, 22 *L. Ed. 2d* at 314. In *Mathis,* the accused was interrogated by a federal revenue agent while in a state prison for an unrelated crime.

Nor does *Escobedo v. Illinois,* 378 *U. S.* 478, 84 S. Ct. 1758, 12 *L. Ed. 2d* 977 (1964), also relied upon by the Appellate Division, support that Court's holding. In *State v. Williams,* 59 *N. J.* 493 (1971), decided this term, Chief Justice Weintraub speaking for a unanimous court said: "We do not read *Miranda* to equate 'custodial interrogation' with the 'focus' of an investigation upon a suspect which was found to be a triggering event in *Escobedo* . . . ." *Id.,* at 501 n. 1. He continued, ". . . [T]he sense of *Miranda* is that 'custodial interrogation,' rather than a mere 'focus' upon a particular suspect, is what will generate the right to the fourfold warnings. *Id.,* at 502 n. 1; see *United States v. Hall,* 421 *F. 2d* 540 (2d Cir. 1969), *cert. denied.* 397 *U. S.* 990, 90 S. Ct. 1123, 25 *L. Ed. 2d* 398 (1970). Thus, custodial interrogation is the deciding factor in determining whether the *Miranda* warnings should be given.

In the present case, unlike the defendant in *Mathis,* Mrs. Graves was not in custody. Further, from our reading of the record we agree with the trial court's finding that two rather than six investigators questioned the defendant at the board office. Defendant did not allege that her questioners conducted the interview in a threatening or overbearing manner. She was not isolated but was in a large public office where many employees were tending to their daily tasks. Unlike *Orozco,* there is no indication that defendant could not leave her questioners had she wished to do so. In the words of *Miranda,* she was not "deprived of [her] freedom of action in any significant way."

It is urged that *Miranda* applies to all welfare investigations. Defendant and *amicus* contend that the interrogation of a welfare recipient by government authorities creates an inherently compulsive atmosphere which requires that the recipient be given warnings. We cannot agree that a welfare official who confronts an applicant or recipient with a request for information which might disclose criminal conduct, thereby exerts a compulsion upon that person that must be dispelled by a recitation of the *Miranda* warnings.[5] Every interrogation no matter how conscientiously conducted is naturally bound to be a tense occasion and evoke apprehension and a sense of pressure, but this is not the kind of pressure which makes questioning unfair. See *State v. Smith,* 32 *N. J.* 501, 550 (1960). Furthermore, a blanket applica-

---

[5]*Miranda* warnings have been held unnecessary in a number of tax cases where incriminatory statements or evidence did not result from "custodial interrogation." *United States v. Prudden,* 424 *F.* 2d 1021 (5th Cir.), *cert. denied,* 400 *U. S.* 831, 91 S. Ct. 62, 27 *L. Ed.* 2d 62 (1970) ; *United States v. Browney,* 421 *F.* 2d 48 (4th Cir. 1970) ; *Spahr v. United States,* 409 *F.* 2d 1303 (9th Cir.), *cert. denied,* 396 *U. S.* 840, 90 S. Ct. 102, 24 *L. Ed.* 2d 91 (1969) ; *Hensley v. United States,* 406 *F.* 2d 481 (10th Cir. 1968) ; *United States v. Mackiewicz,* 401 *F.* 2d 219 (2d Cir.), *cert. denied,* 393 *U. S.* 923, 89 S. Ct. 253, 21 *L. Ed.* 2d 258 (1968) ; *United States v. Squeri,* 398 *F.* 2d 785 (2d Cir. 1968) ; *United States v. Maius,* 378 *F.* 2d 716 (6th Cir.), *cert. denied,* 389 *U. S.* 905, 88 S. Ct. 216, 19 *L. Ed.* 2d 219 (1967).

tion of *Miranda* to such investigations would severally hamper welfare authorities in determining those people eligible for assistance. We do not suggest, however, that *Miranda* warnings need not be given in any welfare investigation. For example, where the welfare official so behaves as to lead the individual to believe, as a reasonable person, that he will be restrained if he attempts to leave, it may well be that *Miranda* should apply. We hold only that under the circumstances here the warnings were not required because the interview did not amount to custodial interrogation.

In view of our holding on this phase of the case we need not consider the State's contention that the warnings need not have been given to the defendant because welfare officials are not law enforcement authorities within the meaning of *Miranda*.

Amicus contends that since failure of a recipient to cooperate with welfare authorities would lead to cessation of benefits, *Green v. Dept. of Institutions and Agencies,* 109 *N. J. Super.* 462, 473 (App. Div. 1970), under the rule of *Garrity v. New Jersey,* 385 *U. S.* 493, 87 S. Ct. 616, 17 *L. Ed. 2d* 562 (1967) and *State v. Stilwell,* 97 *N. J. Super.* 424 (App. Div. 1967) statements of welfare recipients are not admissible against them in criminal prosecutions. The rule of *Garrity* is: where a public employee is threatened with loss of his job if he does not talk, coercion is exerted which impermissibly interferes with the exercise of the Fifth Amendment privilege against self-incrimination. Thus, any statement made by an individual during such interrogation is inadmissible in a criminal proceeding against him. In *Stilwell* it was held that *Garrity* applies to statements made by an administrative official reasonably informed that if he remains silent he will be removed from office, regardless of the fact that the threat of removal did not come from the prosecutorial authorities. *Stilwell, supra* at 427.

It is enough to say that *Garrity* and *Stilwell* do not apply here because there was no coercion operating in the present case which interferred with Mrs. Graves' Fifth

Amendment rights. There is no indication that Mrs. Graves was threatened by her questioners with loss of benefits if she did not cooperate and there is no evidence that she knew of the consequences had she remained silent. *Cf. State v. Clark,* 58 *N. J.* 72 (1971).

█ Notwithstanding our holding above — that defendant's statements made during the interview with O'Boyle and Deangelus were admissible — defendant's conviction must be reversed. Though *N. J. S. A.* 2A:111–3 does not expressly require intent to conceal or to fail to disclose a material fact, considering the scope of the statute and nature of the acts to be avoided we think intent is a necessary element of the offense. See *Morissette v. United States,* 342 *U. S.* 246, 72 *S. Ct.* 240, 96 *L. Ed.* 288 (1952); *State v. Hudson County News Co.,* 35 *N. J.* 284, 293–294 (1961).

It is true Mrs. Graves told the investigators that her husband was living with her during the months in question, the only proper evidence of her guilt.[6] Without more, her statement would lead one to believe that the husband was residing at the house as a member of the family unit. However, the defendant's testimony as buttressed by the caseworker Ford shows that her concept of living together differed from the normal connotation of the term.

█ Several times during the trial Mrs. Graves said her husband was living with her. However, it is clear from her testimony that all she meant was that her husband made sporadic visits of short duration. Her uncontradicted testimony was that none of her husband's clothes were kept at the home and that he contributed no financial support to her or the children. The record does not show defendant knew that her husband's casual coming and going during the months in question was the kind of change in circumstances, living conditions, family situation or income which would

---

[6] O'Boyle's testimony that defendant's husband told him that he was living with the defendant for a period of time was improperly before the jury because it was clearly inadmissible hearsay.

affect the amount of welfare payments, and hence was a change which should have been communicated to the board. Proof of such understanding was essential to a conviction of a charge of fraud. We do not suggest that the presence of defendant's husband should not have been made known to the welfare board. We believe, however, that under the circumstances her failure to do so does not warrant stamping her a criminal on the basis of a fraud. From our reading of the record we are convinced that a jury could not find beyond a reasonable doubt that the defendant intended to conceal a material fact or that she intentionally withheld something which she knew to be a material fact.

The judgment of the Appellate Division is modified and a judgment of acquittal is directed to be entered.

*For modification of Appellate Division decision and direction of entry of judgment of acquittal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*Opposed*—None.