131 N.J. Super. 168 (1974)
329 A.2d 75
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WAYNE K. GODFREY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 21, 1974.
Decided November 14, 1974.
*171 Before Judges LEONARD, SEIDMAN and BISCHOFF.
Mr. Thomas J. Shusted, Camden County Prosecutor, attorney for appellant (Mr. Arnold Golden, Assistant Prosecutor, of counsel).
Mr. Stanley C. Van Ness, Public Defender, attorney for respondent (Mr. Leonard S. Baker, Assistant Deputy Public Defender, of counsel).
*172 The opinion of the Court was delivered by BISCHOFF, J.A.D.
The State appeals, pursuant to leave granted, from an order suppressing defendant's confession. The suppression motion was made on the day of trial but before jury selection. After the motion was granted, further proceedings in the trial court were stayed by order of this court pending our review of that order.
Defendant is charged by indictment with atrocious assault and battery, assault with a dangerous weapon, assault with intent to kill and unlawful possession of a shotgun. The proofs on the motion to suppress show the following facts.
On January 19, 1973 William Frazier was shot while sitting in a bar in Camden. Detective Upshaw learned that the night before the shooting eight or nine persons had been involved in an argument with the victim and that defendant was one of them. In the course of his investigation he sought to interview all of them. Defendant learned through his girlfriend that the police wanted him to come to the police station, and he voluntarily did so. Upon his arrival Upshaw discussed the shooting with defendant and then asked him to take a polygraph test. Defendant did not understand the nature or purpose of such a test and it was explained to him. He agreed to take the test and Upshaw took defendant to a different location in the building where Detective Balzano was to administer the test.
Using the form employed to obtain a written consent to the administration of the polygraph test as a guide, Balzano informed defendant of his rights concerning the polygraph test. When it became apparent to Balzano that defendant was unable to read the form, a clerk was called in to explain to defendant his rights and the form. Defendant initialed the form opposite each warning and signed it. The rights explained to defendant by Balzano and the clerk did not include the warning that anything defendant said could be used against him. Nor is that warning included in the recitation of defendant's rights contained on the printed form which was signed by defendant. Defendant was informed he had a *173 right to remain silent, to have a lawyer before submitting to the test, to have a lawyer appointed by the court if he could not afford one and that he could stop answering questions anytime he wanted to do so. This form also authorized disclosure of the results of the polygraph test to all interested persons even though the results may be unfavorable to defendant, and included therein was a release by defendant of the City of Camden and its employees and officers from liability for disclosures.
The test took approximately two hours to administer, and after its completion Balzano left the room to study the results. He returned to the room and informed defendant that the test results indicated that he had lied during the administration of the polygraph test; that he was present at the time of the shooting and that he was the one who did the shooting. Defendant continued to deny his presence at the scene of the fight the night before Frazier was shot and denied he had killed Frazier. Balzano continued to confront defendant with the test results and defendant finally confessed to the shooting. Balzano immediately summoned Upshaw who was given the test results and told that defendant had confessed. Upshaw took defendant to the Detective Bureau where he was given full Miranda warnings. He was interrogated and a written confession was obtained.
Admitted into evidence at the hearing was a report from a psychiatrist finding defendant mentally retarded, unable to read a newspaper and unable to understand the written waiver from which he had signed.
The trial judge found:
1) the warnings given prior to administration of the polygraph test were adequate for that purpose;
2) once the defendant knew he had failed the polygraph test he was in custody and Miranda warnings were necessary;
3) the warnings given prior to administration of the polygraph test did not satisfy the requirements of Miranda;
4) the oral confessions were not voluntary but the result of interrogation and should be suppressed;
*174 5) the written confession taken immediately thereafter, even though immediately preceded by full Miranda warnings, was tainted by the prior inadmissible, involuntary, oral confession and, as such, was also inadmissible;
6) defendant was of such limited mentality and understanding that considering the totality of the circumstances the confessions were the result of overbearing of the defendant's will by the police action.
The order of suppression followed.
It is not clear in the record whether the State sought to admit into evidence the written confession or both the oral and written confessions. Nor is it clear whether the motion to suppress was directed to one or both. The order appealed from simply orders "that the confession obtained from defendant shall be suppressed." However, our determination makes resolution of that issue unnecessary.
On this appeal the State contends:
1) the oral confessions of defendant were not the result of custodial interrogation as defendant was not in custody and was free to leave the police station;
2) the oral confessions were volunteered and spontaneous, not the result of interrogation;
3) the warnings given to defendant prior to his oral confession were adequate;
4) both defendant's oral and his written confessions were voluntary and admissible.
Before proceeding to a discussion of the issues, a statement of basic principles is appropriate. At a Miranda voir dire the State must prove the confessions were voluntary and knowingly made beyond a reasonable doubt. State v. Yough, 49 N.J. 587, 600-601 (1967); State v. Franklin, 52 N.J. 386, 405 (1968). The findings of a trial judge will not be disturbed if they could reasonably have been reached on sufficient credible evidence in the record, State v. Johnson, 42 N.J. 146, 162 (1964), though we will not hesitate to make new fact findings on the record in a situation where the findings are not exclusively factual but interwined with *175 legal conclusions drawn from the Miranda case and its progeny. State v. Yough, supra, 49 N.J. at 596.

I. CUSTODY
The State contends that the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are not necessary when, as here, a defendant voluntarily goes to a police station upon request and gives an inculpatory statement. It argues that defendant here voluntarily appeared at the police station, was not placed under arrest, was free to leave before taking the polygraph test and free to leave after the conclusion of it.
The protection afforded by Miranda cannot be so narrowly construed. Miranda warnings are required whenever custodial interrogation occurs.
* * * By custodial interrogation, [is meant] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. [Id. at 444, 86 S.Ct. at 1612].
Thus, the initial inquiry is, "Was defendant in custody or was he deprived of his freedom of action in a significant way?"
It is clear that custody in the Miranda sense does not necessitate a formal arrest, nor does it require physical restraint in a police station, nor the application of handcuffs, and may occur in a suspect's home or a public place other than a police station. Orozco v. Texas, 394 U.S. 324, 326, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); Miranda v. Arizona, supra; Rosario v. People of Territory of Guam, 391 F.2d 869, 872 (9 Cir.1968); cf. State v. Graves, 60 N.J. 441 (1972); State v. Seefeldt, 51 N.J. 472 (1968).
While many New Jersey cases exemplify situations where custody has not occurred, State v. Graves, supra; State v. Seefeldt, supra; State v. Zucconi, 50 N.J. 361 (1967); State v. Boscia, 93 N.J. Super. 586 (App. Div. 1967); State v. *176 Williams, 97 N.J. Super. 573, 599 (Cty. Ct. 1967), aff'd 106 N.J. Super. 371 (App. Div.), certif. den. 55 N.J. 76 (1969), cert. den. 397 U.S. 1069, 90 S.Ct. 1510, 25 L.Ed.2d 691 (1970), it is not clear when circumstances short of formal arrest will meet the requirements of the terms "custody" or "deprivation of freedom of action in a significant way." United States ex rel. DeRosa v. Superior Court of N.J., 379 F. Supp. 957, 960 (D.N.J. 1974).
One court, in commenting on this Miranda phase, said:
* * * in the absence of actual arrest, something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so. [United States v. Hall, 421 F.2d 540, 545 (2 Cir.1969), cert. den. 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970)].
Various tests have been formulated by different jurisdictions in an effort to determine when existing circumstances require the administration of Miranda warnings prior to interrogation.[1]
*177 We are satisfied that no precise definition can be formulated which would apply in advance to all cases and prescribe the outer limits of the protection afforded. The problem must be dealt with through a case-by-case approach in which the totality of the circumstances must be examined.
The Supreme Court in the Miranda opinion referred to many of the methods of police investigation which impelled them to formulate the necessary pre-interrogation warnings. Some of them are present here, that is: the inherent pressures of the interrogation atmosphere; defendant's interrogation occurring in a room cut off from the outside world; a police-dominated atmosphere. These facts, coupled with defendant's knowledge of the negative results of his polygraph test, are significant when considering whether defendant "was taken into custody or otherwise deprived of his freedom of action in any significant way" so as to require the administration of the four-fold Miranda warning.
It cannot be seriously argued that after the police had administered a polygraph test to defendant, and as a result thereof were in possession of information indicating to them that (1) defendant had lied to them, (2) defendant was present at the shooting and (3) defendant was actually the man who shot Frazier, they would have permitted him to walk from the inner office where he had been placed by Upshaw and out of the police station. Statements by the detectives to that effect are incredible and not worthy of belief.
*178 We accordingly agree with the finding of the trial judge that at the conclusion of the polygraph test, when the detectives learned defendant had lied about his involvement in the affair, he was from that point forward deprived of his freedom of action in a significant degree and was entitled to full Miranda warnings before any statements made by him thereafter could be considered voluntary.

II. WAS THE DEFENDANT SUBJECTED TO INTERROGATION?
The State contends that even if defendant was in custody the oral confession was spontaneous and voluntary, not the result of interrogation. This argument is predicated on the premise that Balzano's statement to defendant, "You're a liar. You were there. You did it. You did it,"[2] was not interrogation, that it amounted simply to confronting the witness with the evidence against him making his subsequent confession voluntary and, as such, admissible.
Volunteered statements are not affected by Miranda. The fundamental import of the privilege against self-incrimination while an individual is in custody is not whether he is to be allowed the benefit of warnings or counsel but whether he can be interrogated without them. Miranda v. Arizona, supra, 384 U.S. at 478, 86 S.Ct. 1602. "Interrogation" occurs when the subject is placed under a compulsion to speak. Id. at 461, 86 S.Ct. 1602. It is implicit in Miranda that interrogation in this context need not be of the question and answer type. Commonwealth v. Mercier, 451 Pa. 211, 302 A.2d 337, 339-340 (Pa. 1973). Cf. State v. Barnes, 54 N.J. 1 (1969), cert. den. 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 525 (1970); State v. Gallicchio, 51 N.J. 313, cert. den. 393 U.S. 912, 89 S.Ct. 233, 21 L.Ed.2d 198 (1968); State v. Vogel, 45 N.J. 400 (1965); State v. *179 Johnson, 106 N.J. Super. 295, dissenting opinion at 299 (App. Div. 1969), rev'd and dissenting opinion adopted, 55 N.J. 331 (1970).
The exchange in question between defendant and Balzano was initiated by the detective. Defendant's response cannot be termed a spontaneous utterance. The exchange, while not of the question and answer type, was certainly more than idle conversation. Coming immediately after the disclosure of a polygraph test result, the accusation that, "You're a liar. You were there. You did it. You did it," was clearly made in an attempt to obtain a confession. What was said by the police officer under the circumstances here present was equivalent to interrogation within the intent and meaning of Miranda, supra, requiring full and complete warnings.

III. ADEQUACY OF THE WARNINGS
Having concluded that defendant was subjected to custodial interrogation at the time he made his oral confession, we pass to a consideration of the adequacy of the warnings given. Prior to the administration of the polygraph examination there was read to defendant and explained to him the warnings contained on the form used to obtain his consent to the administration of the polygraph test. This form did not contain the warning that anything said by him could be used against him. It is clear that such a warning would not be necessary prior to the proper administration of the polygraph test. Our cases uniformly hold that the results of such a test, whether favorable or unfavorable, are inadmissible. An exception to this exclusionary rule is recognized where the State and a defendant enter into a stipulation to take the polygraph test and have its results admitted into evidence. Such a stipulation must be "clear, unequivocal and complete." State v. McDavitt, 62 N.J. 36, 46 (1972); State v. Clark, 128 N.J. Super. 120 (App. Div. 1974).
The State recognizes the necessity of warning the defendant that anything he says could be used against him *180 but contends that the warnings given to him were adequate. The State argues that this warning can be clearly inferred from the last paragraph of the form giving consent to the polygraph test. That paragraph reads:
I hereby authorize the Camden Police to disclose both orally and in writing, the results and opinions of the polygraph examination to all interested persons. I further understand that such results and opinions may prove unfavorable to me ...
Substance is to be considered rather than form in passing upon the adequacy of the required Miranda warnings. The Miranda case and those which have followed it do not require that any specific language be used to inform an accused of his rights. Miranda v. Arizona, supra, 384 U.S. at 467, 86 S.Ct. 1602. State v. Melvin, 65 N.J. 1, 14 (1974). However, the Supreme Court in State v. Melvin, supra, did voice strong disapproval of warnings which deviate from the words of the Miranda opinion. Id., 65 N.J. at 14.
It is our task to determine if the warnings given herein afforded defendant the protection against waiving his constitutional immunity against self-incrimination to which he was entitled. It is clear to us that they did not. The portion of the consent form on which the State rests its contention falls far short of informing defendant in clear, unequivocal language that anything he said could be used against him.
There have been cases where confessions made following the administration of a polygraph test have been held admissible. However, the nature of the warning given prior to the administration of the test in those cases makes their holding inapposite. In the Melvin case, supra, defendant volunteered to take a polygraph test. Prior to its administration the rights contained on the consent form were explained to him. But, in addition thereto, defendant was orally advised at the same time that what he said could be used for or against him. The court there held that post-polygraph test admissions were admissible. See also, State v. *181 Magee, 52 N.J. 352, 374 (1968), cert. den. 393 U.S. 1097, 89 S.Ct. 891, 21 L.Ed.2d 789 (1969); United States v. Delay, 500 F.2d 1360, 1365 (8 Cir.1974).
We, therefore, conclude that defendant was subjected to custodial interrogation at the time he made his oral confession and that he had not been given adequate warnings prior thereto and such admissions are accordingly inadmissible and were properly suppressed.
We likewise hold that while the subsequent written confession was preceded by full and adequate warnings, the circumstances were such that it was tainted by the prior inadmissible oral confession. The short period of time between the two confessions, the continuance of the police atmosphere, the same interrogation personnel  together with the psychological factor of having once "let the cat out of the bag"  United States v. Bayer, 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1946); State v. Melvin, supra, 65 N.J. at 13, all combined to taint the written confession with the constitutional infirmity of the oral confession.
This conclusion makes it unnecessary for us to consider the finding of the trial judge that defendant was of such low mentality and understanding that considering the totality of the circumstances the confessions were the result of overbearing of defendant's will by police action and we express no opinion thereon.
Accordingly, the order of suppression of both the oral and written confessions is affirmed and the stay against further proceedings is vacated.
NOTES
[1] Some of the tests are:

(1) the "objective reasonable man test" which holds that custody exists if the action of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe he could not leave freely. United States v. Bekowies, 432 F.2d 8 (9 Cir.1970); People v. Arnold, 66 Cal.2d 438, 58 Cal. Rptr. 115, 426 P.2d 515 (Cal. 1967);
(2) a subjective test in which custody occurs if a suspect is led to believe as a reasonable person that he is being deprived or restricted of his freedom of action or movement under pressure of official authority. Myers v. State, 3 Md. App. 534, 240 A.2d 288 (Md. Ct. Spec. App. 1968). Thus, State v. Graves, supra, by way of dictum, notes that where a "welfare official so behaves as to lead the individual to believe, as a reasonable person, that he will be restrained if he attempts to leave, it may well be that Miranda should apply." See also, Commonwealth v. O'Shea, 456 Pa. 288, 318 A.2d 713 (Pa. Sup. Ct. 1974); Commonwealth v. Marabel, 445 Pa. 435, 283 A.2d 285 (Pa. Sup. Ct. 1971); People v. P., 21 N.Y.2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255 (N.Y. Ct. App. 1967). As another court stated it, the test is not what a defendant thought but rather "what a reasonable man, innocent of any crime, would have thought had he been in defendant's position." People v. Yukl, 25 N.Y.2d 585, 589, 307 N.Y.S.2d 857, 860, 256 N.E.2d 172, 174 (N.Y. Ct. App. 1969), cert. den. 400 U.S. 851, 91 S.Ct. 78, 27 L.Ed.2d 89 (1970);
(3) in other jurisdictions the intent of the officer and the belief of the person interrogated are both rejected in favor of an objective standard which considers the officer's statements and acts and the surrounding circumstances gauged by a reasonable man test. Lowe v. United States, 407 F.2d 1391, 1397 (9 Cir.1969);
(4) still other jurisdictions require a showing by at least some objective evidence that defendant was deprived of freedom of action in some way. Fisher v. Scafati, 439 F.2d 307, 310 (1 Cir.), cert. den. 403 U.S. 939, 91 S.Ct. 2256, 29 L.Ed.2d 719 (1971).
[2] This is not an exact quote from the testimony but the paraphrasing used by the State in its brief, which is fully supported by the testimony.