651 A.2d 118

IN RE A.B., A JUVENILE.

Superior Court of New Jersey
Chancery Division Family Part
Middlesex County

Decided August 1, 1994.

*Robert W. Gluck,* Middlesex County Prosecutor, attorney for State of New Jersey (*Gary J. Grabas,* Assistant County Prosecutor, appearing).

*Norman Epting, Jr.,* Assistant Deputy Public Defender, for defendant.

*Maria Del Valle–Koch,* Assistant Deputy Public Defender, co-counsel, for defendant.

CICCONE, J.S.C.

## I. *STATEMENT OF FACTS*

The above referenced matter came before this court on a motion to suppress evidence and a motion to dismiss the complaint. In order to promote efficiency and expediency, these two motions will be dealt with jointly in this opinion.

On October 30, 1994, Bruce Costello, an officer with the Juvenile Intensive Supervision Program (JISP), a division of the New

Jersey Department of Corrections, responded to the residence of A.B. in New Brunswick, New Jersey. A.B. is a juvenile enrolled in JISP in lieu of a term of incarceration and Costello's visit was pursuant to a routine curfew check.

Upon arrival, Costello spoke with S.B., A.B.'s mother, who stated that she found five small bags filled with a white powdery substance on the inside of A.B.'s bed frame. When Costello questioned A.B. regarding the bags he did so without reading A.B. his *Miranda* warnings. A.B. stated that it was crushed aspirin that he was going to give a friend at school to sell. The New Brunswick Police Department subsequently arrested A.B. (the juvenile), and Juvenile Delinquency Complaint # 9401503 was filed charging A.B. with possession of a controlled dangerous substance (cocaine) and possession of a controlled dangerous substance (cocaine) with intent to distribute.

Subsequent laboratory analysis revealed that the powder was not a controlled dangerous substance. Therefore, on November 4, 1993, the complaint was amended to include a violation of *N.J.S.A.* 2C:35–11a(3), Possession of an Imitation Controlled Dangerous Substance with Intent to Distribute. The court found probable cause that the juvenile committed the offenses charged and released him to the custody of his mother under JISP supervision. On November 30, 1994, Counts 1 and 2 were dismissed at the State's request, and a not guilty plea was entered on Count 3. A pre-trial hearing was conducted on February 16, 1994, to determine if the juvenile's statements were obtained in violation of *Miranda.* Costello testified that pursuant to program guidelines, A.B. was required to answer questions truthfully. Costello further explained that the questioning took place in the living room of A.B.'s home and in the presence of his mother. In addition, Costello testified that he does not have arrest powers pursuant to his duties as a JISP officer and would not have made an arrest attempt if A.B. had left the premises. Finally, Costello testified that the New Brunswick Police Department was not contacted and that officers were not present until after he had questioned A.B.

## II. *APPLICATION OF MIRANDA TO JUVENILE'S STATEMENTS*

It is well settled that *Miranda* warnings are required when a person is subject to a "custodial interrogation." *Miranda v. Arizona*, 384 *U.S.* 436, 444, 86 *S.Ct.* 1602, 1612, 16 *L.Ed.*2d 694 (1966). In addition, it is uncontroverted that a case by case analysis is required in order to determine if a person has been significantly deprived of his or her freedom so as to trigger *Miranda*. Factors to be considered in making this determination include the duration of the detention, the nature and degree of the pressure applied to detain the individual, the physical surroundings of the questioning and the language used by the officer. *United States v. Booth*, 669 *F.*2d 1231, 1235 (9th Cir.1981); *State v. Godfrey*, 131 *N.J.Super.* 168, 175–77, 329 *A.*2d 75 (App.Div. 1974), *aff'd*, 67 *N.J.* 267, 337 *A.*2d 371 (1975); *State v. Cunningham*, 153 *N.J.Super.* 350, 352–53, 379 *A.*2d 860 (App.Div.1977). In addition, "custody" does not necessitate a formal arrest or require that questioning occur in a police station. Under certain circumstances, it may occur in a public place or a suspect's home. *State v. Coburn*, 221 *N.J.Super.* 586, 535 *A.*2d 531 (App.Div.1987), *certif. denied*, 110 *N.J.* 300, 540 *A.*2d 1281 (1988). Thus, whether a custodial interrogation exists is fact sensitive and depends upon the totality of the circumstances. *State v. Pierson*, 223 *N.J.Super.* 62, 67, 537 *A.*2d 1340 (App.Div.1988).

Initially, the defendant argues that the complaint against A.B. should be dismissed, or in the alternative the statements obtained from A.B. should be suppressed, as these statements were secured from him by Costello, acting in his capacity as a JISP officer, in violation of *Miranda*. Specifically, the defense points to Costello's testimony that as a condition of being placed on JISP, A.B. was required, by agreement, to answer truthfully regarding any matter about which he may be questioned. Failure to so respond would lead to possible sanctions, including dismissal from the JISP program and re-sentencing to the New Jersey Training School for Boys in Jamesburg (Jamesburg). Therefore, the defense con-

tends that, as a result of these conditions, this situation was the equivalent of a "custodial interrogation," triggering the need for *Miranda* warnings.

The New Jersey Supreme Court has extended the protection of *Miranda* to questioning by probation officers and to situations where a defendant was the resident of a juvenile probationary institute when questioned. *See State v. Davis,* 67 *N.J.* 222, 337 *A.*2d 33 (1975) (court reversed the conviction of a defendant who made inculpatory statements to parole officer when the officer knew the defendant was charged with armed robbery and specifically questioned the defendant regarding this charge); *State in the Interest of J.P.B.,* 143 *N.J.Super.* 96, 362 *A.*2d 1183 (App.Div. 1976) (Appellate Division held statement given by a juvenile, while a resident of a juvenile probationary institution, inadmissible because statement's coercive aspects, specifically failure to cooperate fully, would result in re-sentencing to a correctional facility). In extending *Miranda* to these situations, the courts reasoned that the questioning was done by an individual acting as an agent of the State, and that the questioning was directed at uncovering criminal acts that were either pending or under investigation. Therefore, the courts concluded that such questioning required a showing that the defendant had been advised of his rights under *Miranda* and knowingly and voluntarily waived them. *See Davis, supra,* 67 *N.J.* at 227, 337 *A.*2d 33; *Interest of J.P.B., supra,* 143 *N.J.Super.* at 105–07, 362 *A.*2d 1183.

The defense submits that, as in *Davis,* JISP Officer Costello specifically questioned A.B. regarding the contents of the packets found in his room, while aware of the provisions of the JISP agreement which presented distinct penal consequences. Therefore, the requirement that A.B. answer truthfully implicated his constitutional rights, according to the defense, and converted the questioning to the equivalent of a "custodial interrogation." The defense argues that interrogation equals questioning which "is reasonably likely to elicit an incriminating response from the suspect." *State v. Helewa,* 223 *N.J.Super.* 40, 46, 537 *A.*2d 1328

(App.Div.1988). Here, the defense asserts the questioning went far beyond routine questioning concerning A.B.'s compliance or non-compliance with his JISP requirements, rather the questions went directly to A.B.'s potential involvement with a controlled dangerous substance. Thus, the defense concludes that the nature and circumstances compelled A.B. to be a witness against himself, in violation of the Fifth Amendment and the principles the Supreme Court was seeking to protect in *Miranda*. Thus, the statements secured from him were in violation of *Miranda* and not voluntary.

Every occasion where an individual is questioned is not the equivalent of a custodial interrogation. *State v. Godfrey*, 131 *N.J.Super.* 168, 175, 329 *A.*2d 75 (App.Div.1974), *aff'd*, 67 *N.J.* 267, 337 *A.*2d 371 (1975). Rather, a custodial setting is thought to contain "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak." *Miranda*, 384 *U.S.* at 467, 86 *S.Ct.* at 1624. In *Oregon v. Mathiason*, 429 *U.S.* 492, 97 *S.Ct.* 711, 50 *L.Ed.*2d 714 (1977), *Miranda* warnings were held not to be applicable where a suspect voluntarily went to the police station, was not under arrest, and left after a brief interview. *Id.* The Supreme Court concluded the individual was not in custody or otherwise deprived of his freedom of action in any significant way, and thus was not held in a coercive environment to which *Miranda* would have been applicable. *Id.* at 495, 97 *S.Ct.* at 714.

A similar limitation of *Miranda* was extended to routine reporting sessions between a probation officer and a probationer in *Minnesota v. Murphy*, 465 *U.S.* 420, 104 *S.Ct.* 1136, 79 *L.Ed.*2d 409 (1984). In *Murphy*, the defendant, as conditions of a three year probationary period, was required to participate in a treatment program for sexual offenders, to report to his probation officer periodically, and to be truthful in all matters. *Id.* During a treatment session, the defendant admitted to a rape and murder that occurred six years prior to his sentence. At a subsequent meeting between the defendant and the probation officer, the

defendant again admitted to the prior crimes. Consequently, the defendant was indicted for first degree murder. *Id.* Based upon the foregoing, the Supreme Court concluded that the defendant's statements to his probation officer were not violative of *Miranda,* reasoning that the meeting was not a custodial interrogation because there were no restraints on his actions or movements, and prior probationary meetings with the officer eliminated any coercive aspects from the meetings. *Id.* More importantly, the Court rejected the contention that probationary terms which required the defendant to answer truthfully created a custodial setting. *Id.*

This court recognizes that Article I, paragraph 7, of the New Jersey Constitution may grant greater rights and protection against unreasonable searches and seizures than the Fourth Amendment. *See State v. Bruzzese,* 94 *N.J.* 210, 216, 463 *A.*2d 320 (1983); *State v. Hunt,* 91 *N.J.* 338, 344–46, 450 *A.*2d 952 (1982); *State v. Alston,* 88 *N.J.* 211, 225, 440 *A.*2d 1311 (1981); *State v. Johnson,* 68 *N.J.* 349, 353, 346 *A.*2d 66 (1975). In addition, as the defense correctly asserts, the New Jersey Constitution "does not speak in absolute terms but strikes a balance between the interest of the individual in being free of police interference and the interests of society in effective law enforcement." *State v. Dilley,* 49 *N.J.* 460, 468, 231 *A.*2d 353 (1967).

However, the situation here is distinguishable from New Jersey case law, which has afforded greater rights pursuant to the New Jersey Constitution. The questioning of A.B. did not present the coercive or custodial interrogation that was present in these cases. Specifically, in *State v. Davis,* 67 *N.J.* 222, 337 *A.*2d 33 (1975), *cert. den.,* 425 *U.S.* 943, 96 *S.Ct.* 1684, 48 *L.Ed.*2d 187 (1976), the defendant was incarcerated and charged with a subsequent offense after he was questioned by his parole officer. A.B. was not incarcerated nor in custody, and there was no new offense pending to which his statements applied. Likewise, in *State in the Interest of J.P.B.,* 143 *N.J.Super.* 96, 362 *A.*2d 1183 (App.Div.1976), the juvenile was a *resident* at a State institution for juvenile offenders and was required to give a full statement of personal problems

including criminal behavior. A.B. was not a resident at such an institution when his statement was given.

While Costello was not a probation officer, the terms and rules governing probation and JISP are similar. A.B.'s statement was given during a routine meeting with his supervising officer, and he was asked about the suspected CDS only after being confronted with the packets by the juvenile's mother. This confrontation was less intrusive than in *Murphy*, as Costello did not have prior knowledge of any possible or new offenses and only contacted the police after speaking with A.B. Furthermore, the general obligation that A.B. had to answer questions truthfully did not convert an otherwise noncustodial situation, in which voluntary statements were given in a noncoercive environment, into a "custodial interrogation." *See Oregon v. Mathiason, supra,* 429 *U.S.* at 492, 97 *S.Ct.* at 711; *See also Minnesota v. Murphy, supra,* 465 *U.S.* at 429–30, 104 *S.Ct.* at 1143.

In addition, A.B. was not in custody nor was his freedom of movement restricted in a significant way. The questioning lasted for approximately fifteen minutes and was free from coercive activity, evidenced by the fact that the questioning took place in the living room of A.B.'s home and in the presence of his mother. Finally, Costello was not a law enforcement officer with the authority to detain A.B. if he left.

█ Most significant, however, is the fact that, as in *Murphy*, any privilege A.B. may have had was voluntarily waived by him. By accepting JISP as an alternative to incarceration, A.B. waived any and all protection that an average citizen would be entitled to as provided by the constitution and as expanded by *Miranda*. Therefore, after reviewing the totality of circumstances, the conversation between the juvenile and Costello did not rise to the level of a custodial interrogation to which *Miranda* warnings are applicable. Consequently, this evidence shall not be suppressed and this complaint shall not be dismissed upon this basis.

## III. *VIOLATION OF N.J.S.A. 2C:35-11*

 As a result of this incident, as discussed previously, A.B. was originally charged by complaint with violations of *N.J.S.A.* 2C:35-10a(1), possession of controlled dangerous substance, cocaine, and 2C:35-5b(2), possession of controlled dangerous substance with the intent to distribute same. After analysis by the state laboratory, the prosecution moved to amend the charges to a 2C:35-11 violation, imitation of controlled dangerous substances, distribution, possession, manufacture, etc.

The State submits that *N.J.S.A.* 2C:35-11 provides for a separate offense if an individual represents that a substance is or has the nature, effect or appearance of a controlled dangerous substance or its analog. The representation can be express or implied and can arise from the defendant's conduct.

Here, these charges rest specifically on the provisions of *N.J.S.A.* 2C:35-11a(3), which provides:

A. It is unlawful for any person to distribute or to possess or have under his control with intent to distribute any substance which is not a controlled dangerous substance or controlled substance analog:

. . .

(3) Under circumstances which would lead a a reasonable person to believe that the substances is a controlled dangerous or controlled substance analog:

In addition, the statute sets forth presumptions, as follows:

Any of the following shall constitute prima facie evidence of such circumstances:

(a) The substance was packaged in a manner normally used for the unlawful distribution of controlled dangerous substance or controlled substance analogs . . .

(b) The distribution or attempted distribution of the substance was accompanied by an exchange of or demand for money or other thing as consideration for the substance, and the value of the consideration exceeded the reasonable value of the substance.

(c) The physical appearance of the substance is substantially the same as that of a specific controlled dangerous substance or controlled substance analog.

Ordinarily, the defense submits that without anything else, these statutory presumptions would prevail. However, in this particular case, the defense asserts that these presumptions are rebutted by the confession of the juvenile who when confronted

with the alleged substances told Costello that he had crushed some aspirin to give a friend to sell. According to the defense, a reasonable person, having heard the "confession," would not know whether the juvenile was telling the truth or not. Consequently, the defense argues that, regardless of the packaging and the appearance of the substance, Costello had received additional information which could only create an uncertain and ambivalent belief and not a reasonable belief that the substance in question was a controlled dangerous substance.

The defense concedes that the "reasonable person" referred to is an objective standard. However, the defense submits that the totality of the circumstances must also be considered in applying the reasonable person standard. A belief, according to the defense, must be well founded and not ambivalent or speculative. Thus, under the circumstances of this particular case, the defense submits that Costello's conclusions or beliefs were not those of a reasonable person.

The proposition that Costello was bound by the juvenile's statement is inappropriate. Under the circumstances of this case, the conduct of three separate individuals indicated that they thought the five packets contained a controlled dangerous substance (CDS). Initially, the juvenile's mother turned the packets over to Costello because she was concerned about the nature of the contents. Costello, based upon his observations, of the nature of the packaging and their hidden location on the inside of the juvenile's bed frame, concluded the substance could be a CDS. Finally, the New Brunswick Police Department, based upon their knowledge and beliefs, arrested A.B. and drafted the complaint charging him with possession of CDS with intent to distribute. All of these factors are indicative of what a reasonable person believed and that the belief was not "ambivalent or speculative." Therefore, it is unreasonable to suggest that Costello had to rely on the "truthfulness" of A.B.'s self-serving statement despite all other circumstances.

*N.J.S.A.* 2C:35–11 provides for what a reasonable person would believe, and, paramount to the juvenile's statement, is the packaging and physical appearance of the substance, which is *prima facie* evidence of a violation of *N.J.S.A.* 2C:35–11. Therefore, A.B.'s motion to dismiss the complaint because the statute does not apply is denied.

## IV. *CONCLUSION*

Based upon the foregoing, the defendant's motions to suppress evidence obtained in violation of *Miranda* and to dismiss the complaint upon this basis and by reason of the inapplicability of the statute, are denied.