110 N.J. Super. 137 (1970)
264 A.2d 729
STATE OF NEW JERSEY, RESPONDENT,
v.
HOWARD LAMBERTSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1970.
Decided April 21, 1970.
*139 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Burton T. Gans argued the cause for appellant (Messrs. Kushinsky & Gans, attorneys).
Mr. John F. Russo, First Assistant Prosecutor, argued the cause for respondent (Mr. Robert H. Doherty, Ocean County Prosecutor, attorney).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
Defendant, then one of the three members of the board of chosen freeholders which governs the County of Ocean (see N.J.S.A. 40:20-20), appeals from a judgment of conviction entered on a jury verdict finding him guilty of violating N.J.S.A. 2A:135-8(c).
This case stems from the furnishing and installation by Abco Floor and Wall Covering Inc. (Abco) of tile in the ladies room of the Ocean County court house for which it received $894. from the county. The State charged that defendant was financially interested in the transaction  indeed that he was a 10% stockholder and a director of *140 Abco  and therefore was guilty of the criminal offense described in paragraph (c) of N.J.S.A. 2A:135-8, which reads as follows:
Any member of a board of chosen freeholders or of the governing body of a municipality, or of a board of education in any school district, who:
a. Is directly or indirectly concerned in an agreement or contract for the construction of any bridge or building, or any improvement to be constructed or made for the public use or at the public expense; or
b. Is a party, either as principal or surety, to an agreement or contract between the county, municipality or school district, as the case may be, and any other party; or
c. Is directly or indirectly interested in furnishing any goods, chattels, supplies or property to or for the county, municipality or school district, the agreement or contract for which is made or the expense or consideration of which is paid by the board or governing body of which such member is a part 
Is guilty of a misdemeanor.
Defendant moved for an acquittal at the end of the State's case. When it was denied, he rested without offering any evidence. His first and principal contention on appeal is that it was error to deny the motion for acquittal; that the jury could not reasonably find from the State's evidence that he was guilty beyond a reasonable doubt of the crime charged. We disagree.
The public policy which N.J.S.A. 2A:135-8 (formerly Crimes Act, § 32; Comp. Stat. p. 1755) seeks to effectuate was described by Vice-Chancellor Backes in Ames v. Board of Education of Montclair, 97 N.J. Eq. 60 (Ch. 1925):
It is an inexorable rule of the common law, and it finds expression in our statute, that public servants shall not be interested, directly or indirectly, in any contract made with public agencies of which they are members. Public service demands an exclusive fidelity. The law tolerates no mingling of self-interest. [at 64-65]
However, to establish criminal liability under the statute requires more than a mere showing that the letter of the unrestricted legislative language has been violated. As construed in State v. Kuehnle, 85 N.J.L. 220, 225-226 *141 (E. & A. 1913), the statute also requires the showing of a criminal intent.
The basic problem with which the court was concerned in Kuehnle was whether in enacting the statute the Legislature intended to make the prohibited acts "criminal without regard to the criminal intent," as a prior decision, Halsted v. State, 41 N.J.L. 552 (E. & A. 1879), had held was the legislative intendment in the case of a statutory crime relating to the expenditure of public funds in excess of appropriations.
In answering the posed question in the negative and distinguishing Halsted, the court in Kuehnle said:
The legislature may if it will make an act criminal without regard to the criminal intent; the question is, has it done so. The construction of the statute in [Halsted] turned on the fact that the duty to be performed was a simple one, not subject to very great difficulties in its performance. In the present case the statute, if construed literally and as not requiring a corrupt motive, would lead to results that surely could not have been intended. We think, therefore, that the material averment is the averment that the defendant was corruptly interested and concerned, * * *. [85 N.J.L., at 225]
Although the issue thus resolved in Kuehnle was whether the Legislature had made the proscribed conduct criminal without regard to the criminal intent, it cannot be gainsaid that the prolix opinion in that case and its interchangeable use of the several words "criminal intent," "corrupt intent," "corrupt motive," "corrupt interest" and "corrupt concern" leads to some confusion as to the exact nature of the State's obligation in a prosecution for a violation of the statute.
Defendant argues that Kuehnle holds that the State's obligation is to show a specific "corrupt intent,"  something in addition to or beyond what generally would suffice for a finding of criminal intent. The State, on the other hand, contends that it need not show anything beyond what is commonly encompassed within the words "criminal intent" or mens rea.
*142 We agree with the State. Kuehnle's use of the words "corrupt intent" is but another way of referring to criminal intent. Cf. State v. Begyn, 34 N.J. 35, 50 (1961). Here the statute does not call for a "specific intent" over and beyond a criminal intent as an element of the crime. To incorporate such a requirement would constitute impermissible judicial legislation. That is not what the court did in Kuehnle. Rather, it recognized the settled rule that the constituents of a criminal offense at common law are an evil intention, mens rea, and an unlawful act,  see State v. Labato, 7 N.J. 137, 149 (1951)  and that unless it was satisfied (and it was not) that the Legislature intended to make the conduct proscribed by section 32 of the Crimes Act criminal without regard to criminal intent, the statute would be construed as requiring a showing of such intent in order to convict a defendant of the criminal offense.
No contrary implication is to be drawn from what we said in State v. Williamson, 54 N.J. Super. 170 (1959), aff'd 31 N.J. 16 (1959), a case involving the sufficiency of an indictment charging a city manager with misconduct in office. This court, in holding Kuehnle "not authoritative as to the matter in contention before us," referred to it as a case where "statutory construction * * * [led] to a proper determination that corruption was intended as an essential element of the offense in question." 54 N.J. Super., at 185.
The cases use many words  criminal intent, corrupt intent, corruption, bad faith and the like. Their reference however is not to a "specific intent" where the statute defining the crime does not mandate a specific intent. Nor do they require a showing that defendant was conscious that his acts were unlawful. Rather, the reference is to an awareness by defendant of the existence of all those facts which make his conduct criminal. Morss v. Forbes, 24 N.J. 341, 358-359 (1957); United States v. Crimmins, 123 F.2d 271, 272 (2 Cir.1941).
In Morss v. Forbes the court concluded that to establish a violation of the statute, N.J.S.A. 2A:146-1 (since repealed), *143 which made it a misdemeanor for one to "wilfully and maliciously" tap telephone wires, required a showing of a criminal intent  "the element of general intent must be proved before a contravention of the wiretapping statute can be established." 24 N.J., at 359.
But, as the court then noted  and its comments apply to the statute here involved:
We should not, however, confuse intent with motive. Proof of motive is never essential to a conviction but may be evidential. 22 C.J.S. supra, [Criminal Law] § 31 (a); 1 Wharton, supra, [Criminal Law (12th ed. 1932)] at § 156. * * *
The ordained inquiry is whether the act condemned was committed with full knowledge of the facts, in a conscious and purposeful manner, without legal justification or excuse. It must not be the product of inadvertence or negligence or any state of mind other than a free and untrammeled will. This is the definition of criminal intent embodied in the words "willfully and maliciously," as used in this statute. The accused must intend to act in the way proscribed by the statute, but it is immaterial that he does not know or believe his conduct violates the law.
Even positive belief that the act is lawful should not exempt the doer from criminal responsibility. Consciousness of unlawfulness is not essential. 1 Wharton, supra, at § 160. If ignorance were a good defense, the administration of the penal law would again depend upon the well-nigh impossible ascertainment of hazy and amorphous mental conditions and opaque logic. When, with a clear knowledge of all the facts, one deliberately and intentionally does an act in violation of a positive law, cognizant of its existence, he cannot be excused on the basis that his animating desire was essentially praiseworthy. [at 359]
The same views were succinctly expressed by Judge Learned Hand in United States v. Crimmins, supra:
Ordinarily one is not guilty of a crime unless he is aware of the existence of all those facts which make his conduct criminal. That awareness is all that is meant by the mens rea, the "criminal intent", necessary to guilt, as distinct from the additional specific intent required in certain instances. [123 F.2d, at 272]
That is not to say that the State may not offer additional affirmative evidence to show that defendant acted in bad faith and with an intent to profit at the expense of the *144 governmental unit involved. Such was the purpose of the State's attempt in this case to prove through the testimony of a building contractor, one James Birdsall, that the amount claimed in Abco's voucher and paid by the county, $894, was excessive.
The voucher description of the "goods or services rendered" reads as follows:
Ceramic tile to be furnished and installed in ladies rooms on all wall areas, floor to ceiling, and on the entire floor area. Installation will be done with ceramic tile adhesive perma lastic No. 390 over existing sheetrock walls and floor. All walls will be firred out by carpenter before tile is applied. Floor will be set in 1/8" bed of thin set mortar type cement and grouted with portland cement and sand.
The court sustained defendant's objection to the proffered testimony, bottoming its ruling on the fact that the indictment charged the furnishing of "goods, chattels, supplies and property" in violation of N.J.S.A. 2A:135-8(c). In the court's view, the charge was thus limited to the furnishing of the ceramic tile; its installation constituted an "improvement," a separate matter to be charged, if at all, under N.J.S.A. 2A:135-8(a). To permit Birdsall to testify as to the alleged excessiveness of the total amount paid for both supplying the tile and installing it would inject into the case a separate offense with which defendant was not charged, a violation of N.J.S.A. 2A:135-8(a) relating to the "construction of any bridge or building, or any improvement to be constructed or made for public use or at the public expense."
Although it is of no controlling significance on the issues before us, we are satisfied that the proffered testimony should have been admitted. The trial court construed N.J.S.A. 2A:135-8(c) too narrowly. All that Abco did incidental to the furnishing of the tile, as described in the voucher, can fairly be construed as included within the phrase used in the statute and the indictment, the "furnishing * * * of goods."
*145 The court's charge to the jury with respect to the element of criminal intent was more beneficial to defendant than the rule which we have above stated. After being instructed as to the elements of the crime set forth in the statute itself, the jury was told that the State was also required to prove beyond a reasonable doubt
* * * that the defendant had a corrupt or criminal intent to violate the statute. By corrupt or criminal intent is meant that the State must show that the defendant acted with an evil motive or in bad faith and not honestly with the intention that as the result of his act the interests, right and advantage of the public would be adversely affected. * * * [T]hese acts which the State alleges were committed, may indeed be committed without a corrupt or criminal intent, but whether or not they were constitutes a jury question which only you the jury may determine.
Whichever rule is applied  that embodied in the court's charge or that stated in our holding  the court acted properly in denying defendant's motion for acquittal; the proofs were sufficient to permit the jury to find the elements essential to a conviction.
That Abco had furnished and installed the ceramic tile and had received payment of $894 from the county was uncontradicted. So, too, were the proofs of defendant's interest in Abco during all pertinent times, both as one of its nine directors and as a 10% owner of the corporation, entitled to 10 of its 100 shares.
The testimony of Patrick J. Geraghty, police chief of Lacey Township, who was also a director and stockholder of Abco, disclosed that Abco was formed by a group consisting of himself; Frank Digilio who was "to run the company" and be "manager of the store" in Forked River, Lacey Township, Ocean County; Harold Schuman, an attorney and registered agent of Abco; Arthur Brown, undersheriff of Ocean County; Howard Lambertson (defendant), a member of the county's board of chosen freeholders; Harold Rodgers, then chairman of the Democratic County Committee; *146 Frank Napolitano and James Greeley "tile setters with the company," and a Leonard Gilliar, Jr.
Although Abco's certificate of incorporation was not filed until October 29, 1965, it is a permissible inference, not only from Geraghty's testimony but also from the evidence of a bank loan granted on October 15, 1965 on a note executed by Brown, Geraghty, Digilio, Lambertson, Rodgers and Schuman on that date, as well as from a lease for a term beginning October 15, 1965 (containing an option to purchase) to Abco of property on Lacey Road, Forked River, that the group's activities began prior to the filing of the certificate of incorporation.
Abco's corporate records, prepared by and in the possession of Schuman's law office, contain a waiver of notice of the first meeting of incorporators and subscribers, signed by the nine persons above named, fixing November 1, 1965 as the date of the meeting. Also in the minute book are signed assignments from the incorporators of the total of 100 shares subscribed for by them to the following: Greeley, 15 shares; Napolitano, 15 shares; Digilio, 17 shares; Rodgers, 7 shares; Gilliar, 7 shares; Lambertson, 10 shares; Brown, 10 shares; Geraghty, 9 shares, and Schuman, 10 shares. The balance of the minutes of that meeting, of the first meeting of the nine-member board of directors, and the stock certificates are also written up but do not bear any signatures. That fact, however, affords no basis for negating an inference that the minutes and stock certificates as written represent what the parties had agreed to  an inference for which confirmation is to be found in the annual report of the corporation dated November 10, 1965, signed by Greeley as president and Schuman as secretary, and filed with the Secretary of State. The report lists the nine directors, including defendant, as well as the corporate officers, and gives the number of shares of stock issued and outstanding as 100 shares.
So, too, the State's evidence affords sufficient basis for a finding that defendant Lambertson's interest in Abco continued; *147 witness various loans made by The First National Bank of Toms River on the following notes: a note dated November 12, 1965, signed by Brown, Digilio, Schuman, Rodgers, Gilliar, Lambertson and Geraghty; another note by the same individuals as well as by Greeley and Napolitano dated January 7, 1966; the promissory note dated May 12, 1966 for $12,793.20 (a "small business loan") executed not only by Abco but also by Napolitano, Brown, Gilliar, Digilio, Schuman, Geraghty, Rodgers and Lambertson as co-makers; a note dated July 6, 1966 signed by Schuman, Brown, Digilio and Lambertson in connection with a mortgage loan on a piece of property in Forked River, and a note dated July 7, 1966 signed by Lambertson and six of the others.
Turning now to the element of criminal or corrupt intent  no evidence was offered by the State as to the circumstances under which Abco was engaged to furnish and install, and did on or about January 18, 1966 furnish and install, the ceramic tile, nor is there any direct evidence that Lambertson then knew of such engagement and of the tiling of the ladies rest room. But an inference that he did may reasonably be drawn not only from his activities in the financial affairs of Abco detailed above but also from the evidence that the tile was furnished only a little more than two months after the corporation was formed and that the installation was in the county court house. Absent affirmative evidence to the contrary, it would be naive to assume that defendant, as one of the three members of the board of chosen freeholders, would be unaware that work of the character here involved was being done or was to be done in the court house.
Also evidential on the issue of criminal intent is the extent of defendant's interest in Abco (cf. State v. Kuehnle, supra, 85 N.J.L., at 226) and the absence of any evidence of a protest by defendant with respect to either the engagement of or the payment to Abco. On the contrary, the record discloses that the voucher submitted by Abco under date of *148 April 19, 1966 to obtain payment of $894 bears the approval of defendant as chairman of the "Bill Committee" and his signed certification as freeholder reading:
I, having knowledge of the facts, certify that the materials and supplies have been received or the services rendered; said certification being based on signed delivery slips or other reasonable procedures.
The remaining points argued by defendant require but brief comment. We find no substance in the contention that "the State's proofs did not conform to the allegations of the indictment, resulting in a material variance which was fatal."
Nor do we find any merit in defendant's criticism of the court's charge, or his claim that it was ambiguous and misleading.
The record belies defendant's charge that he was deprived of a fair trial.
Consideration of the remaining two points argued, relating basically to evidential rulings by the trial court, would require us to invoke the plain error rule, the points not having been raised in the trial court. We find no justification for so doing.
No prejudicial error resulted from the admission into evidence of Geraghty's testimony before the grand jury, assertedly for the purposes of neutralization.
Defendant's present challenge of the admission into evidence of the letter of April 28, 1966, written by Abco to The First National Bank of Toms River, is unwarranted in view of the absence of an objection to its admission into evidence. Moreover, no prejudice resulted since the letter merely recited the stockholders' approval of Abco's application for a small business loan  an approval which was more significantly indicated, as noted above, by their execution as co-makers with Abco of the note given to evidence the loan.
The judgment of conviction is affirmed.