130 N.J. Super. 465 (1974)
327 A.2d 672
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM VOGT, DEFENDANT-APPELLANT.
A-811-73.
Superior Court of New Jersey, Appellate Division.
Submitted September 30, 1974.
Decided October 16, 1974.
*467 Before Judges CONFORD, MICHELS and MORGAN.
Messrs. Heilbrunn, Tabman, Josephs, Finkelstein, Heilbrunn & Garruto, attorneys for appellant (Mr. Richard Galex, on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. David S. Baime, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant was convicted in a municipal court of disorderly conduct in making annoying telephone calls to one Jensen, in violation of N.J.S.A. 2A:170-29. The conviction was affirmed in a trial de novo on the municipal court transcript by the Ocean County Court.
Jensen testified that he had received a number of calls at his Toms River home from one who made threats against him or his wife, or just breathed into the phone. He could not identify the voice, which sounded as though it were being disguised, and gave the impression of a male "teenager." He thereupon requested the telephone company to trace the calls. Similar calls continued to be made to the Jensen home, and the telephone company informed him that all the calls made at the times of such subsequent incidents, as reported by Jensen to the company, were shown by its tracer system to have originated at the home of defendant. Defendant resided there with his wife and children aged 2 and 4 years.
There was proof that up until one year prior to these occurrences Jensen had worked under the supervision of defendant for a common employer and that after Jensen left to take another job he had had an altercation with defendant over a "bad recommendation" the latter had given Jensen's new employer.
The State called as a witness one Anderson, employed by the New Jersey Bell Telephone System as a "switchman" in the Toms River central office of the company. He was in charge of the department in that office which operated and maintained tracing equipment. He described the tracing *468 method of operation in detail.[1] Although Anderson did not operate the tracing equipment used in this case, that having involved equipment at the Lakewood central office of the company, he produced the original IBM computer cards of the company on which the tracer equipment had purportedly recorded the time and originating telephone number of the irregular calls received at the Jensen home during the period of the tracer. The cards showed the originating telephone to have been that at defendant's home. Anderson was designated to testify because the man in charge of the trace actually conducted at the Lakewood central office was on vacation at the time of trial. While the cards were not formally offered in evidence, it appears from the transcript that they were submitted to the municipal court judge and to defense counsel for their examination and in effect treated as though in evidence. There seems no doubt that if formally offered in evidence, and challenged, they could properly have been qualified for admission as business records under Evid. R. 63 (13).
Defendant concedes in his brief that the several decisions in the Hibbs case, supra, 123 N.J. Super. 108 (App. Div. 1973), certif. den. 63 N.J. 253 (1973), 123 N.J. Super. 124 (App. Div. 1972) and 123 N.J. Super. 152, the opinion of the Mercer County Court cited above, "stand for the proposition that telephone tracing equipment is reliable and accurate" for purposes of admissibility of evidence based thereon, but he nevertheless contends that there must in each case be proof that "the equipment was operating properly and that the test was conducted by a qualified individual." Defendant maintains that the latter prerequisites of proof were here absent.
*469 It may be noted that this court sustained a conviction in Hibbs, supra, notwithstanding there was no indication in its two opinions that there was specific proof that the telephone tracing equipment used in that case was "operating properly" or that the particular technician who attached the tracing equipment was "qualified." It seems implicit in the last opinion of the court (123 N.J. Super. 124) that the establishment by expert proof of the automatic nature of the computer-like equipment was tantamount to a demonstration that it was "operating properly" and that the qualifications of the technician the company assigned to apply the trace could be assumed.
This telephone equipment and the method of its use as a tracer, as described in Judge Moore's opinion for the Mercer County Court in Hibbs (123 N.J. Super. 152), is sharply differentiable from the use of such apparatus as drunkometers, breathalyzers, VASCAR instruments, etc. As to each of the latter a small, discrete piece of equipment is involved, requiring periodic inspection or adjustment (e.g., by calibration) for use on specific occasions and an especially trained operator for its administration  one who may sometimes make subjective judgments in the course of his use of the equipment. But see, State v. McGeary, 129 N.J. Super. 219, 227-28 (App. Div. 1974). It is for these reasons that in penal proceedings dependent for proof of guilt on the evidence revealed by such devices it is required not only that the scientific basis of the equipment be proven (or be subject to judicial notice as) reliable, but that the particular instrument be shown to have been in proper working order and the operator qualified to use it. See State v. Johnson, 42 N.J. 146, 171 (1964); State v. Finkle, 128 N.J. Super. 199, 209 (App. Div. 1974), certif. granted 65 N.J. 575 (1974).
We are fully satisfied that in the light of the present record and the authority of and findings in the Hibbs case it was not necessary for the State to offer any more specific proof that the tracing equipment was in proper working order. We do believe, however, that fairness and due judicial *470 caution in a case like this, involving penal consequences to defendant, call for the State on remand to produce the testimony of the individual, if available and ascertainable, who made the tracing attachment, or otherwise his responsible superior, to testify as to the procedure used and the qualifications of the operator.
We also believe no question should remain open as to the evidentiary status of the IBM cards mentioned above. Unless defendant stipulates that they shall be regarded as admitted in evidence as business records, the State is given leave to attempt to qualify them as such.
We therefore remand to the Ocean County Court for the limited purposes stated and direct that court to make findings of fact on such testimony and return the record and findings to this court within 30 days of the filing of this opinion. We retain jurisdiction.
NOTES
[1] We omit the details of his testimony as it was to the same general effect as the description of the equipment and method of operation set forth comprehensively by the Mercer County Court in State v. Hibbs, 123 N.J. Super. 152 (1972). See further references to the Hibbs case, infra.