158 N.J. Super. 68 (1978)
385 A.2d 867
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOUIS MOORE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 3, 1977.
Decided March 29, 1978.
*72 Before Judges FRITZ, BOTTER and ARD.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Robert A. Elkinson, designated counsel, of counsel and on the brief).
Mr. Joseph P. Lordi, Essex County Prosecutor, attorney for respondent (Mr. Kenneth Ply, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by BOTTER, J.A.D.
In a nonjury trial defendant was convicted of obtaining unemployment compensation by false representations and the failure to disclose facts which he had the duty to disclose, contrary to N.J.S.A. 2A:111-2. A suspended jail sentence and probation were imposed and defendant was ordered to make restitution of $1,440 in monthly installments. On this appeal defendant contends that his conviction should be reversed because only incompetent hearsay evidence was introduced by the State to prove that defendant was actually employed during the periods for which he had claimed unemployment benefits. Defendant also contends that he cannot be convicted of violating N.J.S.A. 2A:111-2 without proof of a specific intent to defraud.
The indictment charged that defendant, in support of his claim for unemployment insurance benefits, falsely represented that he was unemployed from June 1972 to November *73 1972 when, in fact, he was employed during that time period by Barrett & Co., Inc. (Barrett). The State introduced certain records pertaining to defendant's claim for benefits, including claim forms specifying defendant's periods of alleged employment and unemployment. Checks for benefits paid to defendant and endorsed by him were also placed in evidence. Above defendant's endorsement on each check was a certification that he was unemployed during the period represented by the check.
To prove that defendant was employed during relevant periods of time, Exhibits S-27 and S-28 were introduced in evidence over defendant's objection. S-27 was a form used by the Division of Unemployment Benefits in a fraud investigation. See N.J.A.C. 12:17-9.4(c). It showed, among other things, claimant's alleged employer and his earnings between June 1972 and December 1972. This form, and form S-28 which showed what was done during the investigation, were prepared by Gerald D. Robertson, an Unemployment Insurance Claims Investigator for the New Jersey Department of Labor and Industry. He testified that he visited Barrett in February 1973 and examined payroll records and time cards showing defendant's employment and earnings for the period in question. He was assisted by Marilyn Asts, Barrett's head bookkeeper and office manager. Barrett's records showed defendant had received wages between June 1972 and December 1972. These records were copied by Robertson and recorded on S-27, which was signed by Barrett's representative as well as Robertson.
According to the testimony, Barrett's records showed that defendant worked "less than a full week" at times and at other times "almost a complete week" between June and December 15, 1972, and his earnings during that time (exclusive of the week beginning July 1, 1972, for which he received vacation pay of $128) were as follows:

 Week ending Week ending
 June 9 $272.20 September 22 $123.68
 July 21 $105.98 September 29 $146.52
*74 July 28 $146.14 October 6 $178.67
 August 4 $106.80 October 13 $ 82.94
 August 11 $124.00 October 20 $116.63
 August 18 $ 88.94 October 27 $107.80
 August 25 $114.54 November 3 $161.78
September 1 $135.57 November 10 $221.57
September 8 $138.24 November 24 $241.33
September 15 $144.32 December 1 $289.00

Defendant testified that he had worked for Barrett but was laid off, and so he applied for unemployment benefits. He said he was called back to work two or three times and worked for two or three days until he was laid off again. He claims that each time he went to pick up his unemployment check he reported that he had gone back to work at Barrett on a part-time basis. He testified that Barrett's manager had told him that he could draw unemployment benefits if he worked less than 32 hours a week. He admitted that he thought "they should have cut" his benefits for the weeks that he worked part time, "but they didn't cut me."
The trial judge found that defendant may have felt he was entitled to unemployment benefits and, as such, did not have a conscious intent to cheat. But he also found that defendant knowingly concealed from clerks at the Unemployment Compensation office that he was employed and "positively represented that he was not employed." The trial judge concluded that a sufficient showing had been made to establish a violation of N.J.S.A. 2A:111-2. For reasons which will be stated later in this opinion, we are satisfied that the findings on the issue of intent are sufficient to support a conviction under this statute.

I
Defendant contends that the admission of S-27 and S-28 did not conform to our Rules of Evidence and that his Sixth Amendment right of confrontation was violated when proof that he was working was based exclusively on these records. But for exhibits S-27 and S-28 defendant's motion for *75 judgment of acquittal should have been granted at the conclusion of the State's case.
For some purposes S-27 and S-28 may be considered business records of Robertson's own employer, admissible pursuant to Evid. R. 63(13), see Schneiderman v. Strelecki, 107 N.J. Super. 113, 118-119 (App. Div.), certif. den. 55 N.J. 163 (1969); Brown v. Mortimer, 100 N.J. Super. 395, 403-404 (App. Div. 1968); cf. Fagan v. Newark, 78 N.J. Super. 294 (App. Div. 1963); but cf. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1942); and they may also be viewed as reports of a public official admissible under Evid. R. 63(15). Cf. State v. McGeary, 129 N.J. Super. 219 (App. Div. 1974). However, problems are raised by the use of records or reports compiled by government agents in the course of an investigation for purposes of criminal prosecution. See United States v. Oates, 560 F.2d 45 (2 Cir.1977); United States v. Ware, 247 F.2d 698, 700 (7 Cir.1957); Hartzog v. United States, 217 F.2d 706 (4 Cir.1954); Olender v. United States, 210 F.2d 795 (9 Cir.1954). These problems, generated when an investigator's motives and conclusions may be questioned, are minimized in the case at hand since S-27 was offered merely for the purpose of reflecting the contents of Barrett's payroll records and time cards. Cf. Zacher v. United States, 227 F. 2d 219, 227-228 (8 Cir.1955), cert. den. 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858 (1956); United States v. Mortimer, 118 F.2d 266 (2 Cir.), cert. den. 314 U.S. 616, 62 S.Ct. 58, 86 L.Ed. 496 (1941). We need not decide the troubling question of the admissibility of a report made by an agent investigating a possible violation of the law administered by that agency. Whether or not such a report is admissible as a business record or report of a government official under Evid. R. 63(13) or (15), in this case S-27 may constitute the best available secondary evidence of Barrett's payroll records. Therefore, we prefer to decide whether Barrett's original payroll records would have been admissible as proof of defendant's employment during the *76 periods in question and whether S-27 was admissible under Evid. R. 70 in place of the original records. See Pierce v. State, 42 Ala. App. 53, 151 So.2d 793 (Ct. App. 1963).
It appears that the trial judge did not approach the issue in this fashion. The trial judge admitted S-27 as a report of a public official of an event observed by him which "was within the scope of his duty either to perform the act reported or to observe the act, condition or event reported and to make the written statement" within the meaning of Evid. R. 63(15). Defense counsel conceded that Robertson, the investigator, was a public official as the term is used in Evid. R. 63(15), but he contended that the included hearsay rule (Evid. R. 66) was not satisfied because "there had been no testimony from any representative of Barrett Company or any individual to authenticate the authenticity of those records" or to testify to the accuracy of the records kept by Barrett. To this the trial judge responded that if Barrett's "record itself were here, I would permit it under 63(13)."
We can understand why the trial judge assumed that payroll records and time cards are records kept in the ordinary course of business. Every employer must keep true and accurate employment records, open to inspection and copying by a representative of the Division of Unemployment and Temporary Disability Insurance (Unemployment Division). N.J.S.A. 43:21-11(g); N.J.A.C. 12:16-5.1, 5.2 and 5.4. The evidence showed that Robertson examined the original records in the presence of Barrett's representative; that he copied the data shown on S-27 from those records, and that both he and Barrett's representative signed the report in certification of its accuracy. Robertson also testified, without objection, that the "payroll records and time cards" which he examined "were those maintained by Barrett & Company in the ordinary business  as an ordinary business record." However, this testimony was given after S-27 and S-28 had been admitted in evidence over defense counsel's objection. Because Robertson's competence to give such testimony was not established, and because there *77 was no testimony by anyone connected with Barrett that the original payroll records were, in fact, compiled and kept in the ordinary course of business, we conclude that the conditions of admissibility for such records under Evid. R. 63(13) were not satisfied.
In view of the importance of S-27 in establishing an essential element of the crime, the included hearsay rule, Evid. R. 66, required proof that Barrett's records were themselves business records which satisfied Evid. R. 63(13) if excerpts from those records were to be admitted as part of the business records of the Unemployment Division or as part of a report of a public official admissible pursuant to Evid. R. 63(15).[1] If S-27 was offered as secondary evidence *78 of Barrett's business records, it would have been necessary to prove that what was copied were business records within the meaning of Evid. R. 63(13). Thus, every basis for admitting S-27 in evidence required proof that Barrett's payroll records were business records, that is, records "made in the regular course of a business, at or about the time of the act, condition or event recorded," compiled and prepared in a fashion that justifies admission. Evid. R. 63(13). We prefer, therefore, to consider the admissibility of S-27 as secondary evidence to avoid the problems raised by viewing it as a report of an investigating agent.
There are two obstacles to the admissibilty of Barrett's original payroll records had they been offered. The first is defendant's claim that his Sixth Amendment right of confrontation is violated by the use of hearsay to prove an essential element of the crime. The second is that the conditions for admitting the payroll records as business records, established by Evid. R. 63(13), must be satisfied. State v. Vogt, 130 N.J. Super. 465, 468 (App. Div. 1974); see State v. Kalafat, 134 N.J. Super. 297, 300 (App. Div. 1975); State v. McGeary, supra, 129 N.J. Super. at 223-227.

II
Concern for a defendant's right of confrontation is raised whenever hearsay evidence is offered in a criminal trial. Unfortunately, the right of confrontation has not been fully and finally defined, nor is there agreement on the essentials and limits of that right. The right to cross-examine a witness whose statement is offered against an accused is *79 characteristic of the right. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). But the hearsay rule and the Confrontation Clause, while protecting similar values, do not coincide. Dutton v. Evans, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213, 225-226 (1970); Note, "Confrontation and the Hearsay Rule," 75 Yale L.J. 1434, 1436 (1966). Mr. Justice Harlan, concurring in California v. Green, 399 U.S. 149, 186, 90 S.Ct. 1930, 1949, 26 L.Ed.2d 489, 513 (1970), suggested that the Confrontation Clause means "that a State may not in a criminal case use hearsay when the declarant is available." However, Justice Harlan cautioned against the stultifying effect of equating confrontation with the right of cross-examination, as "it would transplant the ganglia of the hearsay rules and their exceptions into the body of constitutional protections." 400 U.S. at 173, 90 S.Ct. at 1943, 26 L.Ed.2d at 505.
The admission of business records and other documentary hearsay proof has been sustained against a claimed violation of the Confrontation Clause, although in some cases the opinions or conclusions of the maker have been excised. State v. Reddick, 53 N.J. 66, 68-69 (1968); United States v. Sand, 541 F.2d 1370 (9 Cir.1976), cert. den. 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 553 (1977); Hanley v. United States, 416 F.2d 1160 (5 Cir.1969), cert. den. 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970); McDaniel v. United States, 343 F.2d 785 (5 Cir.), cert. den. 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965); Kay v. United States, 255 F.2d 476 (4 Cir.), cert. den. 358 U.S 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958); Henson v. State, 332 A.2d 773 (Del. Sup. Ct. 1975); State v. Durham, 418 S.W.2d 23 (Mo. Sup. Ct. 1967); People v. Nisonoff, 293 N.Y. 597, 59 N.E. 2d 420 (Ct. App. 1944); People v. Porter, 46 App. Div.2d 307, 362 N.Y.S.2d 249 (App. Div. 1974); Robertson v. Commonwealth, 211 Va. 62, 175 S.E.2d 260 (Sup. Ct. 1967); State v. Kreck, 86 Wash.2d 112, 542 P.2d 782 (Sup. Ct. 1975). But see State v. Matousek, 287 Minn. 344, 178 N.W. 2d 604 (Sup. *80 Ct. 1970) (dictum); State v. Tims, 9 Ohio St.2d 136, 224 N.E.2d 348 (Sup. Ct. 1967); State v. Henderson, 554 S.W. 2d 117 (Tenn. Sup. Ct. 1977). The use of documentary hearsay evidence is frequently justified on the basis of necessity as well as the qualities of accuracy, reliability and trustworthiness which it is likely to possess. Kay v. United States, supra at 480-481; State v. Kreck, supra 86 Wash.2d at 787-788, 542 P.2d 782; cf. State v. Martorelli, supra, 136 N.J. Super. at 454-455.
We are satisfied that Barrett's original payroll records, assuming they were compiled in the regular course of business, could have been admitted in this case without violating defendant's confrontation rights. The payroll records were likely to be more reliable than any recollection of the specific events they memorialized. For this reason the inability to cross-examine the person who recorded the wages paid to defendant would have presented no practical loss. At the time of trial, in June 1976, it is unlikely that any bookkeeper could have testified to anything other than the usual practice of recording such data. Defendant himself testified that he did work for Barrett during part of the time for which he claimed unemployment benefits. Establishing the exact dates of such work was the key issue in the trial. Business records are unusually competent for this purpose, even though other evidence may be available.

III
The ordinary conditions that must be satisfied before S-27 can be admitted as secondary evidence are that (a) Barrett's records would themselves have been admitted as business records under Evid. R. 63(13), (b) production of the original records is excused by the terms of Evid. R. 70(1); (c) Robertson's copies of those records represent the best "conveniently available" secondary evidence of the original records, Evid. R. 70(2), and (d) the authenticity of S-27 as a copy of original records satisfies the demands of Evid. R. 67.
*81 Laying the foundation for admitting business records and secondary evidence is governed by Evid. R. 8(1). See State v. Cardone, 146 N.J. Super. 23, 28-29 (App. Div. 1976), certif. den. 75 N.J. 3 (1977); cf. Report of State Rules of Court Review Comm'n, New Jersey Rules of Evidence (1972), comment on Rule 8(1), § 8(1)-1 at 23; cf. United States v. Matlock, 415 U.S. 164, 172-175, 94 S.Ct. 988, 993-995, 39 L.Ed.2d 242, 250-252 (1974); Fed. Evid. Rule 104(a), 28 U.S.C.A., Notes of Advisory Committee on Proposed Rules at 40; Fed. Evid. Rule 1101(d) (1), 28 U.S.C.A.; 1 Weinstein's Evidence, # 104[01] at 104-09 to 104-10 (1975). Proofs offered to satisfy conditions for the admission of other evidence, that is to say, proof of the competence of other evidence (id.), need not comply with ordinary rules of evidence, except for Rule 4 or a valid claim of privilege. Evid R. 8(1); State v. Cardone, supra (manufacturer's certificates for calibration of radar unit); Howard v. Sigler, 454 F.2d 115 (8 Cir.), cert. den. 409 U.S. 854, 93 S.Ct. 188, 34 L.Ed.2d 98 (1972) (affidavit used to establish unavailability of a witness); State v. Martin, 293 Minn. 116, 197 N.W.2d 219 (Sup. Ct. 1972) (marriage certificate, affidavit and defendant's admissions used to determine the existence of a marital privilege invoked by defendant to prevent a witness from testifying); State v. Williams, 554 S.W.2d 524 (Mo. Ct. App. 1977) (affidavit, letters, prosecutor's representation and trial judge's telephone call used to establish unavailability of witness). We note, further, that in Howard v. Sigler, supra, the Eighth Circuit held that the Confrontation Clause does not apply to rulings of a judge on such collateral issues as the conditions for admissibility of other evidence as distinguished from issues relating to the guilt or innocence of an accused. See also United States v. Matlock, supra, 415 U.S. at 174-175, 94 S.Ct. at 994-995, 39 L.Ed., 2d at 251.
Thus, Evid. R. 8(1) sanctions the use of hearsay evidence to establish all of the conditions for the admission of S-27 which are contained in Evid. R. 63(13), Evid. R. 70 and *82 Evid. R. 67. Many kinds of hearsay may be used for this purpose. See cases cited above. Indeed, representations of counsel are frequently considered in determining the availability of a potential witness for various purposes. Cf. State v. Clawans, 38 N.J. 162, 172 (1962) (opportunity should be allowed "by argument or proof" to explain the nonproduction of a witness to avoid instructions to the jury on the adverse inference that may be drawn from such nonproduction); Castilleja v. Southern Pacific Co., 445 F.2d 183, 186 (5 Cir.1971) ("It is customary in federal courts to accept statements of parties or counsel as to unavailability of witnesses as a predicate to the use of [their] depositions * * *").
Having referred to the requirements of Evid. R. 63(13) for the admissibility of business records, we will now consider the conditions for admitting secondary evidence. Evid. R. 70 and Evid. R. 67.

IV
The Best Evidence Rule, embodied in Evid. R. 70, requires production of an original writing unless the proponent establishes that its nonproduction is excused for one of a number of reasons, such as, that it is lost or has been destroyed innocently, or that it is "not reasonably procurable," or that it has been withheld by an opponent. When justification exists, "the best written secondary evidence of the content of the writing conveniently available is admissible." Evid. R. 70(2). Oral testimony can be admitted to prove its contents "only if there is no conveniently available written secondary evidence." Id.
The prosecuting attorney advised the trial judge that he was unable to produce Barrett's original payroll records and time cards. He stated that Barrett moved three or four times and apparently lost defendant's records for the period in question. He stated, further, that he had talked with the executive director of the Ocean Leather Company, "which used to be Barrett & Company," and was told that he did not *83 have defendant's employment records. The prosecuting attorney was then referred to Mr. Barrett in Pennsylvania. He spoke to a Joan Barrett, who looked for the records and advised that she could find only a W-2 form signed by defendant but was "not able to locate the original employment records reflecting wages earned and hours worked." Although no testimony of Barrett's representative was offered to substantiate these facts, the representations of the prosecuting attorney suggest that Barrett no longer had a place of business in New Jersey, if it was in existence at all, and that its original payroll records were "not reasonably procurable."
Next, Evid. R. 67 must be considered. This rule provides:
Authentication of the original or a copy of a writing is required before it may be received in evidence. Authentication may be by evidence sufficient to sustain a finding of its authenticity or by any other means provided by law.
Ample proofs were offered to establish that S-27 was prepared by Robertson in the course of his regular employment and contained data copied from records identified by Barrett's head bookkeeper as payroll records and time cards. Thus, the trial judge was justified in concluding that S-27's authenticity was proved sufficiently for its use as secondary evidence of Barrett's business records.
The trial judge, however, did not determine the admissibility of S-27 as secondary evidence. As noted before, S-27 was admitted as an original record. The trial judge observed that the evidence offered sufficient guarantees of its reliability and that defendant was not prejudiced by the lack of cross-examination because payroll records were likely to be more accurate than an individual's memory long after the wages were paid and recorded. Nevertheless, the trial judge did not consider whether he should accept hearsay evidence under Evid. R. 8(1) to satisfy the conditions for admitting S-27 as secondary evidence. Although Evid. R. 8(1) permits the use of hearsay to establish the competence of other evidence, the result here was to accept hearsay representations of the *84 prosecuting attorney to admit secondary evidence as proof of hearsay. Secondary evidence of payroll records was the only evidence offered on the State's case to prove an essential element of the crime  that defendant was employed at certain periods of time.
Although S-27 appears to satisfy the quest for accuracy and reliability, sufficient attention was not given to the need to justify the use of such secondary evidence. The search for the original records was made on the eve of trial and during the trial. No one connected with Barrett was produced to testify as to the unavailability of the original records.
We are not satisfied that the State has made a sufficient showing of its inability reasonably to produce more and better evidence on these subjects. Compare Merrill v. United States, 365 F.2d 281 (5 Cir.1966), cert. den. 386 U.S. 994, 87 S.Ct. 1311, 18 L.Ed.2d 340 (1967). There was no evidence, hearsay or otherwise, describing the procedures used in making the records that Robertson examined. Some conclusions can be drawn from Robertson's testimony, although he described the records in general terms rather than in specific detail. It may well be that Robertson's testimony was the only source of proof reasonably available. However, a greater showing of necessity should have been made before asking a trial judge to accept such proof of the conditions for admitting secondary evidence of business records in the circumstances of this case.

V
The last issue to be considered relates to the kind of intent required for a violation of N.J.S.A. 2A:111-2. N.J.S.A. 2A:111-2 provides:
Any person who, knowingly or designedly, by means of any false statement made orally or in writing, or by means of concealing or failing to disclose a material fact which it is his duty to reveal, obtains * * * from any agency of the State or from any county or municipality * * * under pretense that he * * * is poor and needy or out of employment, any money * * * is guilty of a misdemeanor.
*85 The trial judge found beyond a reasonable doubt that defendant "knowingly * * * concealed * * * that he was employed and positively represented that he was not employed" at a time when he was actually employed, as established by "records that were made at the time." The trial judge found the records to be "more reliable evidence of fact than the defendant's recollection at the moment [which] may well have been a result of suggestion or the years since this indictment has been pending."
The trial judge stated that there was no need to find "a conscious intent to cheat * * * so long as there is an intentional misstatement or intentional concealment of employment status." The trial judge suggested that defendant may have felt he was entitled to unemployment benefits, but that it was "immaterial, whether or not for one reason or another the claimant has devised his own idea of eligibility or entitlement." The trial judge found no "express evidence" of an "intent to cheat and defraud." His meaning is contained in his comment that defendant may have felt entitled to benefits much as many other claimants do "under varying circumstances of reduced unemployment [sic"] and "in a moral sense they may not feel that they are cheating anyone."
As we read the trial judge's findings, defendant knowingly misrepresented his employment status to obtain money "under pretense that he is * * * out of employment." These findings establish a violation of N.J.S.A. 2A:111-2. It is not necessary to prove a "corrupt intent," so long as the evidence establishes a criminal intent. See State v. Lambertson, 110 N.J. Super. 137, 141-143 (App. Div.), certif. den. 56 N.J. 479 (1970). It is immaterial that defendant may have felt entitled to some unemployment benefits and, therefore, did not have a "conscious" intent to defraud or to commit a criminal or immoral act. It is not necessary to show that defendant was "conscious that his acts were unlawful." Id. Defendant himself testified, in effect, that he received more benefits than he thought he should receive, based upon the hours he allegedly worked  or did not *86 work. It was unnecessary to determine the exact amount of overpayment, so long as the wrongful acts inducing such payment have been established. State v. Harris, 70 N.J. 586, 589 (1976).
Defendant relies on State v. Graves, 60 N.J. 441 (1972), which involved a similar statute, N.J.S.A. 2A:111-3. There defendant's conviction for "welfare fraud" was set aside because there was no proof that defendant intentionally concealed or failed to disclose a material fact, implicitly required by N.J.S.A. 2A:111-3. 60 N.J. at 451. N.J.S.A. 2A:111-3 does not contain the words "knowingly or designedly" which are contained in N.J.S.A. 2A:111-2, but the court found that implicit in N.J.S.A. 2A:111-3 was the requirement that the State prove "that the defendant intended to conceal a material fact or that she intentionally withheld something which she knew to be a material fact." 60 N.J. at 451-452. There the difficulty was in proving that Mrs. Graves knew that her husband's "sporadic visits of short duration," without contributing any financial support to her or the children was a change in circumstances or family situation that would have affected the amount of welfare payments and, therefore, were material facts that should have been reported. Id. In our case there is no dispute about the material fact concealed or misrepresented. The statute speaks of the "pretense" that defendant is "out of employment." This material representation was emblazoned on the checks defendant endorsed. Although defendant asserted that he did report his employment status when he made his claims, the trial judge found that this fact was intentionally and knowingly misrepresented and concealed by defendant.
Thus, the case at hand satisfies the intent standard which the Supreme Court in Graves found to be implicit in N.J.S.A. 2A:111-3. By using the words "knowingly or designedly" the Legislature made the required intent explicit in N.J.S.A. 2A:111-2. No stricter proof of intent was required.
*87 Unfortunately, the difference between a crime requiring "specific intent" and one requiring "general intent" is "quite elusive," as Chief Justice Weintraub said in State v. Maik, 60 N.J. 203, 214 (1972), and the terms are often loosely used. See State v. Lambertson, supra, 110 N.J. Super. at 142. Often scienter, or guilty knowledge, is equated with criminal or evil intent, so that the "constituents of a criminal offense at common law are an evil intention and an unlawful act." State v. Labato, 7 N.J. 137, 149 (1951); State v. Quatro, 31 N.J. Super. 51, 56 (App. Div. 1954). See also, State v. Greco, 29 N.J. 94, 98-99, 103 (1959), where the terms "fraudulent intent," mens rea and scienter appear to be used to refer to the same essential requirement of the crime of obtaining money by false pretenses in violation of N.J.S.A. 2A:111-1 ("knowingly or designedly, with intent to cheat or defraud"), namely, "that a defendant knew of the falsity of his representations * * *."
State v. Del Vecchio, 142 N.J. Super. 359, 361 (App. Div.), certif. den. 71 N.J. 501 (1976), held that, since breaking and entering with intent to steal (N.J.S.A. 2A:94-1) is a specific intent crime, intoxication to a degree that deprives defendant of the capacity to form the specific intent to steal constitutes a defense to the crime. Similarly, setting fire to a building, contrary to N.J.S.A. 2A:89-2, "with intent to burn it" is a specific intent crime. State v. Quatro, supra, 31 N.J. Super. at 55 (App. Div. 1954). But arson, defined in N.J.S.A. 2A:89-1 as "willfully or maliciously" burning a dwelling house, does not require a "specific purposive intent to burn," according to State v. Kinlaw, 150 N.J. Super. 70, 73 (App. Div. 1977).
Within reasonable limits the Legislature may define a crime without regard to the state of mind accompanying the act of the transgressor, so that the mere doing of an act is a crime "even in the absence of the mens rea which was a necessary prerequisite at common law." Morss v. Forbes, 24 N.J. 341, 358 (1957); State v. Quatro, supra, 31 N.J. *88 Super. at 55-56. What the court said in Morss v. Forbes, supra, is relevant here:
* * * We should not, however, confuse intent with motive. Proof of motive is never essential to a conviction but may be evidential. * * *
The ordained inquiry is whether the act condemned was committed with full knowledge of the facts, in a conscious and purposeful manner, without legal justification or excuse. It must not be the product of inadvertence or negligence or any state of mind other than a free and untrammeled will. This is the definition of criminal intent embodied in the words "willfully and maliciously," as used in this statute. The accused must intend to act in the way proscribed by the statute, but it is immaterial that he does not know or believe his conduct violates the law.
Even positive belief that the act is lawful should not exempt the doer from criminal responsibility. Consciousness of unlawfulness is not essential * * *. If ignorance were a good defense, the administration of the penal law would again depend upon the well-nigh impossible ascertainment of hazy and amorphous mental conditions and opaque logic. [24 N.J. at 359]
Quoting Judge Learned Hand in United States v. Crimmins, 123 F.2d 271, 272 (2 Cir.1941), Judge Kolovsky said in State v. Lambertson, supra, 110 N.J. Super. at 142-143, that "awareness by defendant of the existence of all those facts which make his conduct criminal" is what is meant by criminal intent and mens rea, "as distinct from the additional specific intent required in certain instances."
For the purposes of this case it is sufficient to say that the trial judge made findings which establish the necessary intent to constitute a violation of N.J.S.A. 2A:111-2: the intentional or knowing misrepresentation and concealment of defendant's true employment status  the "pretense" of unemployment as stated in the statute  regardless of defendant's knowledge or belief that he was violating the law or was doing an immoral act.

Conclusion
We have stated that S-27, purportedly containing information taken from Barrett's payroll records, was the only *89 proof that defendant was employed when he represented himself as unemployed. No competent proof was introduced to show that the payroll records copied by Robertson were made by Barrett "in the regular course of a business" and that "the circumstances of [their] preparation were such as to justify [their] admission" under Evid. R. 63(13). Nor was a sufficient showing made to explain the absence of Barrett's original payroll records so as to justify the use of S-27, despite the apparent authenticity of such secondary evidence.
Accordingly, we reverse and set aside the judgment of conviction and remand the matter for a new trial.[2]
NOTES
[1] We do not imply that all cases require proof that each item of included or multiple hearsay in business records or reports of public officials satisfies the included hearsay rule or that in all situations copies of original documents contained in or attached to business records must independently satisfy the best evidence rule. See State v. Martorelli, 136 N.J. Super. 449, 453 (App. Div. 1975), certif. den. 69 N.J. 445 (1976).

The 1963 Report of New Jersey Supreme Court Committee on Evidence indicates that the trial judge's discretion to admit some included hearsay contained in business records is found in the last clause of Evid. R. 63(13), namely, "if the sources of information from which it was made and the method and circumstances of its preparation were such as to justify its admission." The Report states:
Rule 63(13) thus has, in effect, a built-in provision for the discretionary admission of included hearsay. It is to be expected that in a number of cases, the `sources' of information on the basis of which a record has been made, will be another declarant who gave information to the declarant (the `maker' or `entrant') who makes the business record that is introduced in evidence. Were it not for such a provision, each hearsay stage in a business record would have to be accounted for under Rule 66, and each hearsay statement included within the business record would have to fall within a separate hearsay exception. Since business records are frequently the product of many states of hearsay, a requirement that each stage be separately accounted for by a hearsay exception would be obstructive and impossible of fulfillment, thus destroying the effectiveness of the Rule. A more flexible approach is required and is provided by this Rule. The reliability of included hearsay statements is based on the regularity with which business is done, the routine quality of each transaction, the lack of motive to single out any transaction for the purpose of making an untrustworthy statement and the responsibility of each employee to make accurate and reliable statements. [Report, Comment on Rule 63(13), at 179-180 (1963)]
[2] Conceivably, we could remand for the taking of further proofs on the issue of the admissibility of S-27 as secondary evidence of Barrett's payroll records, with the determination of guilt or innocence to depend on such proof. See State v. Vogt, supra, 130 N.J. Super. at 469-470; United States v. Smith, 172 U.S. App. D.C. 297, 310-311, 521 F.2d 957, 970-971 (1975); State v. Williams, supra, 554 S.W.2d at 535-536. However, the parties may seek to offer additional evidence on the issue of defendant's employment at the critical time. It seems more practical, therefore, to remand the matter for a new trial.